**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249
Of Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| MICHAEL ABO; KYLE ADAMS; JAMES ADAMS-LEAL; JOEL ALBRECHT; DANIEL ALCAZAR; MOHAMMED ALI; BRETT ANDRE; JACOB ANTHONY; HOWARD ARMITAGE; TYLER BACON; GIOVANNI BARR; TADARIO BATTLE; JASON BEAVER; JOHN BENGE; ROBERT BERNO; DAVID BERTOCH; JAMES BOGOSIAN; OSCAR CANAS; HERMAN CARTER; CHRISTIAN CAREY; THOMAS CHAMBERY; FOY CHANDLER; KEVIN CHRIST; ROBERT CLEMENT; SHAWN CLINE; GREG COFFMAN; DEREK COLE; JAMES COYLE; SKY CRAWFORD; CARL CREECH; TODD CULVER; DANIEL CUMMINGS; SHAWN CUTLER; CHRIS DAVIS-MCCOY; LESLIE DEGARMO; XAVIER DELEON-CARBAJAL; JUSTIN DENNEY; ZACHARY DRAPER; AARON EATON; JEREMY ECKHARDT; HILMI ELADEM; DAVID ENDSLEY; UVALDO ESPERICUETA; RICKY EXE; CRAIG FARQUHARSON; DANIEL FELTON; MICKEY FIEZ; JOSEPH FLETCHER; | Case No. 3:21-cv-00196-SB<br><br>**SECOND AMENDED COMPLAINT** |

PAGE 1 – SECOND AMENDED COMPLAINT

**BASIM FLORO; DANIEL FOWLER;
QUINTON FRANKLIN; SCOTT FRAZIER;
TERRY FULLER; EFFIE FULTON;
DANIEL GARCIA; DANIEL GARGES;
BILLY GARMAN; DOUGLAS GASKILL;
VAUGHN GATCHELL; URIAH GIBSON;
JACOB GRANGER; MATTHEW HANLON;
JOHN HARSEN; CODY HATLEY;
TIMOTHY HENKEL; JOHN HERMANN,
TERRY HICKMAN; NORMAN HOAG;
NICHOLAS HOGAN; JEFFREY HOSKINS;
ABEL IBARRA-FRANCO; LUTHER
JACKSON; DERRICK JAY; DANIEL
JOHNSON; RYAN JOHNSON; DONALD
JONES; RANDALL JORDAN; MICHAEL
KELLEY; ALAN KENTTA; SEAN KIEL;
LAURENCE KING; CHRISTOPHER
KITTLER; KORI KNISLEY; MATTHEW
LAMER; STANLEY LEONARD;
CHRISTOPHER LORENZEN; GERARDO
LUNA-BENITEZ; MYLO LUPOLI; JOSEPH
MACE; DAVID MANLEY; TROY MARIN;
GLEN MARSHALL; ALBERT MARVITZ;
MATTHEW MASON; ERIC MCCLAIN;
BRANDON MCLANE; DUSTIN MIKALOW;
PETER MILLARD; MARVIN MITCHELL;
RAUL MONTEJO; RANDAL MOTT;
ROBIN MUIR; LELAND NICHOLSON;
KYLE NONNEMAN; JOSEPH OHRMUND;
DANIEL ORTIZ; JOSHUA OVALLE; RYAN
PEARSON; MARK PECK; SEAN PEN;
DANIEL PERRY; ANTHONY PERSON;
JOSHUA POSTEMA; RONALD POWERS;
CALEB PRATT; ZACHARY PRAUSS;
LONNY PRINCE; TOREN PRUDEN;
ANCLE REED; SHAWN RICHEY; ROCKY
ROBISON; DANIEL RODRIGUEZ;
FRANCISCO RODRIGUEZ; JACOB
ROGERS; CLAYTON SALIKIE; KELLY
SANSBURN; KURTIS SELF; ROY
SHINALL; MAXVILLE SINCAIR; GARY
SLOAN; ADAM SMITH; BRETT SMITH;
NATHANIEL SMITH; ROBERT STEWART;
PETER STROTHER; MATTHEW
STOCKWELL; MARK TEMPLETON;
RYAN THOMAS; FREDDIE TILLETT;**

PAGE 2 – SECOND AMENDED COMPLAINT

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

**EDWARD TOWNSEND; BRYAN TRIMBLE; TREVOR TROLLOPE; RYAN VANHORN; COREY WADE; JAMES WAGNER; ROBERT WALKER; TRACY WALLS; RICHARD WEAVER; MICHAEL WHEELER; ANTHONY WHITE; JONATHAN WHITE; JACOB WHITT; BRANDON WILLIS; CHARLES WITHROW; WAYNE WOODRUFF; JUSTIN WOODS; RICHARD WRIGHT; and TYLER YOUNG,**

       **PLAINTIFFS,**

  vs.

**OREGON DEPARTMENT OF CORRECTIONS**, an agency of the State of Oregon; **OREGON CORRECTIONS ENTERPRISES,** a semi-independent state agency; **PAULA MYERS; NICHOLE BROWN; COLETTE PETERS; SUE WASHBURN; BRAD CAIN; TIM CAUSEY; JOSH HIGHBERGER; BRANDON KELLY; MIKE GOWER; MARK NOOTH; ROB PERSSON; TYLER BLEWETT; KEN JESKE; LIZA EMORY;** and **DAVID PEDRO**,

       **DEFENDANTS**.

## INTRODUCTION

1.    Plaintiffs are prisoners in the custody of the Defendant Oregon Department of Corrections (ODOC). Plaintiffs bring claims arising from ODOC staff's failure to protect prisoners from contracting the novel coronavirus COVID-19. Each plaintiff contracted COVID-19 due to the deliberate indifference to their safety by (1) knowingly housing infected prisoners with prisoners not infected with COVID-19, (2) forcing prisoners to work with prisoners that were infected with COVID-19, (3) sending prison staff that have been exposed to the virus to work and thus exposing the prisoners with whom they come into contact, or (4) otherwise

PAGE 3 – SECOND AMENDED COMPLAINT

exposing them to persons infected with the disease. Plaintiffs seek economic, non-economic, and punitive damages, as well as their attorney fees, costs, and expenses.

## PARTIES

### Defendants

2.    Defendant ODOC is an agency of the State of Oregon.

3.    Defendant Oregon Corrections Enterprises (OCE) is a semi-independent state agency that employs incarcerated individuals.

4.    Defendant Colette Peters was at all relevant times director of ODOC and is sued in her individual capacity. At all relevant times, Defendant Peters acted under color of law.

5.    Defendant Mark Nooth was at all relevant times the Eastside Assistant Operations Director of the ODOC and is directly responsible for the operations of six ODOC prisons, including four at issue in this lawsuit: Eastern Oregon Correctional Institution (EOCI), Two Rivers Correctional Institution (TRCI), Snake River Correctional Institution (SRCI), and Deer Ridge Correctional Institution (DRCI). At all relevant times, Defendant Nooth acted under color of law.

6.    Defendant Rob Persson was at all relevant times the Westside Institutions Administrator for the Oregon Department of Corrections and was directly responsible for the operations of eight ODOC prisons including four at issue in this lawsuit: Coffee Creek Correctional Facility (CCCF); Columbia River Correctional Institution (CRCI), Santiam Correctional Institution (SCI), Shutter Creek Correctional Facility (SCCF), Oregon State Correctional Institution (OSCI), and Oregon State Penitentiary (OSP). At all times relevant, Rob Persson was acting under color of law and is sued in his official capacity.

7.    Defendant Mike Gower was at all relevant times the Operations Director of the

PAGE 4 – SECOND AMENDED COMPLAINT

ODOC and is directly responsible for the operations of ODOC's prisons. At all relevant times, Defendant Gower acted under color of law.

8.      Defendant Paula Myers was at all relevant times superintendent of CCCF and is sued in her individual capacity. At all relevant times, Defendant Myers acted under color of law.

9.      Defendant Nichole Brown was at all relevant times superintendent of CRCI and is sued in her individual capacity. At all relevant times, Defendant Brown acted under color of law.

10.      Defendant Sue Washburn was at all relevant times superintendent of EOCI and is sued in her individual capacity. At all relevant times, Defendant Washburn acted under color of law.

11.      Defendant Brad Cain was at all relevant times superintendent of SRCI and is sued in his individual capacity. At all relevant times, Defendant Cain acted under color of law.

12.      Defendant Tim Causey was at all relevant times superintendent of DRCI and is sued in his individual capacity. At all relevant times, Defendant Causey acted under color of law.

13.      Defendant Josh Highberger was at all relevant times superintendent of OSCI and is sued in his individual capacity. At all relevant times, Defendant Highberger acted under color of law.

14.      Defendant Brandon Kelly was at all relevant times superintendent of OSP and is sued in his individual capacity. At all relevant times, Defendant Kelly acted under color of law.

15.      Defendant Tyler Blewett was at all relevant times superintendent of TRCI and is sued in his individual capacity. At all relevant times, Defendant Blewett acted under color of law.

16.      Defendant Ken Jeske was at all relevant times Administrator for OCE and is directly responsible for the operations of OCE's facilities within Oregon and is sued in his

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

individual capacity. OCE has operations in nine ODOC facilities throughout the State, including

EOCI, TRCI, SRCI, DRCI, CCCF, OSCI, and OSP. OCE operates a garment factory and a call

center at EOCI. At all relevant times, Defendant Jeske acted under color of law.

17.    Liza Emory is the food service manager for EOCI. At all relevant times,

Defendant Emory acted under color of law.

18.    David Pedro is assistant superintendent for EOCI. At all relevant times,

Defendant Pedro acted under color of law.

**Plaintiffs**

19.    Plaintiff Michael Abo was at all relevant times a prisoner in the custody of ODOC

and housed at DRCI.

20.    Plaintiff Kyle Adams was at all relevant times a prisoner in the custody of ODOC

and housed at CRCI.

21.    Plaintiff James Adams-Leal was at all relevant times a prisoner in the custody of

ODOC and housed at EOCI.

22.    Plaintiff Joel Albrecht was at all relevant times a prisoner in the custody of

ODOC and housed at EOCI.

23.    Plaintiff Daniel Alcazar was at all relevant times a prisoner in the custody of

ODOC and housed at OSCI.

24.    Plaintiff Mohammed Ali was at all relevant times a prisoner in the custody of

ODOC and housed at CRCI.

25.    Plaintiff Brett Andre was at all relevant times a prisoner in the custody of ODOC

and housed at OSCI.

26.    Plaintiff Jacob Anthony was at all relevant times a prisoner in the custody of

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

ODOC and housed at EOCI.

27.     Plaintiff Howard Armitage was at all relevant times a prisoner in the custody of
ODOC and housed at SCI and CRCI.

28.     Plaintiff Tyler Bacon was at all relevant times a prisoner in the custody of ODOC
and housed at OSCI.

29.     Plaintiff Giovanni Barr was at all relevant times a prisoner in the custody of
ODOC and housed at OSCI.

30.     Plaintiff Tadario Battle was at all relevant times a prisoner in the custody of
ODOC and housed at EOCI.

31.     Plaintiff Jason Beaver was at all relevant times a prisoner in the custody of ODOC
and housed at CRCI.

32.     Plaintiff John Benge was at all relevant times a prisoner in the custody of ODOC
and housed at EOCI.

33.     Plaintiff Robert Berno was at all relevant times a prisoner in the custody of
ODOC and housed at EOCI.

34.     Plaintiff David Bertoch was at all relevant times a prisoner in the custody of
ODOC and housed at TRCI.

35.     Plaintiff James Bogosian was at all relevant times a prisoner in the custody of
ODOC and housed at SCI.

36.     Plaintiff Oscar Canas was at all relevant times a prisoner in the custody of ODOC
and housed at EOCI.

37.     Plaintiff Herman Carter was at all relevant times a prisoner in the custody of
ODOC and housed at EOCI.

PAGE 7 – SECOND AMENDED COMPLAINT

38.     Plaintiff Christian Carey was at all relevant times a prisoner in the custody of ODOC and housed at TRCI.

39.     Plaintiff Thomas Chambery was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

40.     Plaintiff Foy Chandler was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

41.     Plaintiff Kevin Christ was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

42.     Plaintiff Robert Clement was at all relevant times a prisoner in the custody of ODOC and housed at TRCI.

43.     Plaintiff Shawn Cline was at all relevant times a prisoner in the custody of ODOC and housed at SCI.

44.     Plaintiff Greg Coffman was at all relevant times a prisoner in the custody of ODOC and housed at TRCI.

45.     Plaintiff Derek Cole was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

46.     Plaintiff James Coyle was at all relevant times a prisoner in the custody of ODOC and housed at SCI.

47.     Plaintiff Sky Crawford was at all relevant times a prisoner in the custody of ODOC and housed at SCI.

48.     Plaintiff Carl Creech was at all relevant times a prisoner in the custody of ODOC and housed at TRCI. Plaintiff Todd Culver was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

PAGE 8 – SECOND AMENDED COMPLAINT

49.     Plaintiff Daniel Cummings was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

50.     Plaintiff Shawn Cutler was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

51.     Plaintiff Chris Davis-McCoy was at all relevant times a prisoner in the custody of ODOC and housed at CRCI.

52.     Plaintiff Leslie Degarmo was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

53.     Plaintiff Xavier Deleon-Carbajal was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

54.     Plaintiff Justin Denney was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

55.     Plaintiff Zachary Draper was at all relevant times a prisoner in the custody of ODOC and housed at TRCI.

56.     Plaintiff Aaron Eaton was at all relevant times a prisoner in the custody of ODOC and housed at TRCI.

57.     Plaintiff Jeremy Eckhardt was at all relevant times a prisoner in the custody of ODOC and housed at TRCI.

58.     Plaintiff Hilmi Eladem was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

59.     Plaintiff David Endsley was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

60.     Plaintiff Uvaldo Espericueta was at all relevant times a prisoner in the custody of

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

ODOC and housed at OSCI.

61.    Plaintiff Ricky Exe was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

62.    Plaintiff Craig Farquharson was at all relevant times a prisoner in the custody of ODOC and housed at CRCI.

63.    Plaintiff Daniel Felton was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

64.    Plaintiff Mickey Fiez was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

65.    Plaintiff Joseph Fletcher was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

66.    Plaintiff Basim Floro was at all relevant times a prisoner in the custody of ODOC and housed at CRCI.

67.    Plaintiff Daniel Fowler was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

68.    Plaintiff Quinton Franklin was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

69.    Plaintiff Scott Frazier was at all relevant times a prisoner in the custody of ODOC and housed at TRCI.

70.    Plaintiff Terry Fuller was at all relevant times a prisoner in the custody of ODOC and housed at TRCI.

71.    Plaintiff Effie Fulton was at all relevant times a prisoner in the custody of ODOC and housed at CCCF.

PAGE 10 – SECOND AMENDED COMPLAINT

72.      Plaintiff Daniel Garcia was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

73.      Plaintiff Daniel Garges was at all relevant times a prisoner in the custody of ODOC and housed at TRCI.

74.      Plaintiff Billy Garman was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

75.      Plaintiff Douglas Gaskill was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

76.      Plaintiff Vaughn Gatchell was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

77.      Plaintiff Uriah Gibson was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

78.      Plaintiff Jacob Granger was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

79.      Plaintiff Matthew Hanlon was at all relevant times a prisoner in the custody of ODOC and housed at TRCI.

80.      Plaintiff John Harsen was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

81.      Plaintiff Cody Hatley was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

82.      Plaintiff Timothy Henkel was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

83.      Plaintiff John Hermann was at all relevant times a prisoner in the custody of

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

ODOC and housed at TRCI.

84.    Plaintiff Terry Hickman was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

85.    Plaintiff Norman Hoag was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

86.    Plaintiff Nicholas Hogan was at all relevant times a prisoner in the custody of ODOC and housed at DRCI and CRCI.

87.    Plaintiff Jeffrey Hoskins was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

88.    Plaintiff Abel Ibarra-Franco was at all relevant times a prisoner in the custody of ODOC and housed at CRCI.

89.    Plaintiff Luther Jackson was at all relevant times a prisoner in the custody of ODOC and housed at SCI.

90.    Plaintiff Derrick Jay was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

91.    Plaintiff Daniel Johnson was at all relevant times a prisoner in the custody of ODOC and housed at TRCI.

92.    Plaintiff Ryan Johnson was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

93.    Plaintiff Donald Jones was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

94.    Plaintiff Randall Jordan was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

95.    Plaintiff Michael Kelley was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

96.    Plaintiff Alan Kentta was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

97.    Plaintiff Sean Kiel was at all relevant times a prisoner in the custody of ODOC and housed at DRCI.

98.    Plaintiff Laurence King was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

99.    Plaintiff Christopher Kittler was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

100.    Plaintiff Kori Knisley was at all relevant times a prisoner in the custody of ODOC and housed at TRCI.

101.    Plaintiff Matthew Lamer was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

102.    Plaintiff Stanley Leonard was at all relevant times a prisoner in the custody of ODOC and housed at CRCI.

103.    Plaintiff Christopher Lorenzen was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

104.    Plaintiff Gerardo Luna-Benitez was at all relevant times a prisoner in the custody of ODOC and housed at OSP.

105.    Plaintiff Mylo Lupoli was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

106.    Plaintiff Joseph Mace was at all relevant times a prisoner in the custody of ODOC

PAGE 13 – SECOND AMENDED COMPLAINT

and housed at EOCI.

107.    Plaintiff David Manley was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

108.    Plaintiff Troy Marin was at all relevant times a prisoner in the custody of ODOC and housed at TRCI.

109.    Plaintiff Glen Marshall was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

110.    Plaintiff Albert Marvitz was at all relevant times a prisoner in the custody of ODOC and housed at TRCI.

111.    Plaintiff Matthew Mason was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

112.    Plaintiff Eric McLain was at all relevant times a prisoner in the custody of ODOC and housed at SRCI.

113.    Plaintiff Brandon McLane was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

114.    Plaintiff Dustin Mikalow was at all relevant times a prisoner in the custody of ODOC and housed at CRCI.

115.    Plaintiff Peter Millard was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

116.    Plaintiff Marvin Mitchell was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

117.    Plaintiff Raul Montejo was at all relevant times a prisoner in the custody of ODOC and housed at CRCI.

PAGE 14 – SECOND AMENDED COMPLAINT

118.    Plaintiff Randal Mott was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

119.    Plaintiff Robin Muir was at all relevant times a prisoner in the custody of ODOC and housed at TRCI.

120.    Plaintiff Leland Nicholson was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

121.    Plaintiff Kyle Nonneman was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

122.    Plaintiff Joseph Ohrmund was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

123.    Plaintiff Daniel Ortiz was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

124.    Plaintiff Ryan Pearson was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

125.    Plaintiff Mark Peck was at all relevant times a prisoner in the custody of ODOC and housed at CRCI.

126.    Plaintiff Sean Pen was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

127.    Plaintiff Daniel Perry was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

128.    Plaintiff Anthony Person was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

129.    Plaintiff Joshua Postema was at all relevant times a prisoner in the custody of

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

ODOC and housed at EOCI.

130.    Plaintiff Ronald Powers was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

131.    Plaintiff Caleb Pratt was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

132.    Plaintiff Zachary Prauss was at all relevant times a prisoner in the custody of ODOC and housed at SCCF.

133.    Plaintiff Lonny Prince was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

134.    Plaintiff Toren Pruden was at all relevant times a prisoner in the custody of ODOC and housed at CCCF.

135.    Plaintiff Ancle Reed was at all relevant times a prisoner in the custody of ODOC and housed at SCI.

136.    Plaintiff Shawn Richey was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

137.    Plaintiff Rocky Robison was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

138.    Plaintiff Daniel Rodriguez was at all relevant times a prisoner in the custody of ODOC and housed at CRCI.

139.    Plaintiff Francisco Rodriguez was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

140.    Plaintiff Jacob Rogers was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

PAGE 16 – SECOND AMENDED COMPLAINT

141.    Plaintiff Clayton Salikie was at all relevant times a prisoner in the custody of ODOC and housed at SCI.

142.    Plaintiff Kelly Sansburn was at all relevant times a prisoner in the custody of ODOC and housed at SCI.

143.    Plaintiff Kurtis Self was at all relevant times a prisoner in the custody of ODOC and housed at TRCI.

144.    Plaintiff Maxville Sincair was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

145.    Plaintiff Roy Shinall was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

146.    Plaintiff Gary Sloan was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

147.    Plaintiff Adam Smith was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

148.    Plaintiff Brett Smith was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

149.    Plaintiff Nathaniel Smith was at all relevant times a prisoner in the custody of ODOC and housed at TRCI.

150.    Plaintiff Robert Stewart was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

151.    Plaintiff Matthew Stockwell was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

152.    Plaintiff Peter Strother was at all relevant times a prisoner in the custody of

PAGE 17 – SECOND AMENDED COMPLAINT

ODOC and housed at TRCI.

153.    Plaintiff Mark Templeton was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

154.    Plaintiff Ryan Thomas was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

155.    Plaintiff Freddie Tillett was at all relevant times a prisoner in the custody of ODOC and housed at TRCI.

156.    Plaintiff Edward Townsend was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

157.    Plaintiff Bryan Trimble was at all relevant times a prisoner in the custody of ODOC and housed at SCI.

158.    Plaintiff Trevor Trollope was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

159.    Plaintiff Ryan Vanhorn was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

160.    Plaintiff Corey Wade was at all relevant times a prisoner in the custody of ODOC and housed at CCIC.

161.    Plaintiff James Wagner was at all relevant times a prisoner in the custody of ODOC and housed at TRCI.

162.    Plaintiff Robert Walker was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

163.    Plaintiff Tracy Walls was at all relevant times a prisoner in the custody of ODOC and housed at OSP.

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

164.    Plaintiff Richard Weaver, Jr. was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

165.    Plaintiff Michael Wheeler was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

166.    Plaintiff Anthony White was at all relevant times a prisoner in the custody of ODOC and housed at TRCI.

167.    Plaintiff Jonathan White was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

168.    Plaintiff Jacob Whitt was at all relevant times a prisoner in the custody of ODOC and housed at CRCI.

169.    Plaintiff Brandon Willis was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

170.    Plaintiff Charles Withrow was at all relevant times a prisoner in the custody of ODOC and housed at CRCI.

171.    Plaintiff Wayne Woodruff was at all relevant times a prisoner in the custody of ODOC and housed at EOCI.

172.    Plaintiff Justin Woods was at all relevant times a prisoner in the custody of ODOC and housed at EOCI and OSP.

173.    Plaintiff Richard Wright was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

174.    Plaintiff Tyler Young was at all relevant times a prisoner in the custody of ODOC and housed at OSCI.

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

## GENERAL FACTUAL ALLEGATIONS

175.    COVID-19 is able to be spread from person to person through respiratory droplets, contact with contaminated objects or surfaces, and by being in close personal contact with anyone infected with the virus. At the time plaintiffs were infected, there was no available vaccine for the COVID-19 disease, and no specific medications to prevent or treat it. The only known measures for reducing the spread of the illness were maintaining at least six feet of distance between people, frequent hygiene including hand washing, cleaning, and disinfecting touched surfaces (such as phones, handles, trays, tables, etc.), and covering one's mouth and nose with a mask. Since the beginning of the pandemic, COVID-19 has spread particularly effectively in environments such as nursing homes, jails, and prisons. This was known long before any of the plaintiffs contracted COVID-19.

176.    Plaintiffs are incarcerated in prisons that do not follow, or enforce, this State's required precautions to prevent the spread of the disease COVID-19, as set forth under Governor Kate Brown's Executive Order 20-12, the Center for Disease Control (CDC) and Oregon Health Authority (OHA), currently in effect to protect all Oregonians except prisoners. By failing to follow established guidelines, defendants placed plaintiffs in imminent danger of acute illness, even death, by depriving them of essential medical care or protection from COVID-19.

177.    By any measure, ODOC's response to the COVID-19 pandemic has been woefully inadequate. To date, 3,580 Oregon prisoners have contracted COVID-19; to put this in context, ODOC houses 12,989 prisoners. In other words, about 28% of prisoners in ODOC custody have contracted COVID-19. By contrast, Oregonians overall contracted COVID at a rate of about 3% (about 9 times lower). The reason for this is not a mystery. Contrary to the federal and state guidance regarding COVID-19, ODOC prisons at which plaintiffs reside do not keep

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

prisoners adequately separated from each other or potentially infected prison staff, supply

adequate soap or sanitizer, or provide adequate access to sinks, masks, or other Personal

Protective Equipment ("PPE") to prevent contraction of COVID-19. These prisons do not

adequately quarantine prisoners from staff or prisoners in transport to or from the prison. The

prisons do not adequately screen staff for coronavirus contacts or symptoms. The prisons lack

adequate health care services and capacity to preserve the lives of plaintiffs and other prisoners

suffering from acute, life-threatening COVID-19 infections, where infection of prisoners and

prison staff is erupting. Prison conditions – like communal-use toilets without lids, shared items

in the dining hall, shared telephones and tablets, inadequate handwashing sinks and individual

use soaps, lack of hand sanitizer, cleaning supplies, unenforced mandates on the use of PPE, etc.

– present unsafe living conditions where COVID-19 has spread. Defendants' failure to require,

or enforce, social distancing, PPE, increased testing, or other precautions in prisons and jails

known to slow the spread of COVID-19 placed plaintiffs at imminent risk of contracting

COVID-19.

178.    ODOC does not enforce staff use of PPE by its staff. ODOC corrections staff

routinely do not wear masks and express statements disapproving of wearing masks. Numerous

plaintiffs observed corrections officers referring to COVID-19 as a hoax, an election scare, a

"plandemic" or otherwise indicating allegiance with unhinged conspiracy theories and lies about

the COVID-19 virus. Not wearing masks placed plaintiffs at immediate risk of harm by spread of

COVID-19. Indeed, only prison staff could have spread COVID-19 to plaintiffs since in person

visits from family members have stopped more than a year ago. Further, plaintiffs observed little

if any social distancing measures employed at their prisons, required to prevent spread of an

infectious disease like COVID-19. Prison staff routinely search cells and prisoners without

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

changing gloves or washing hands, and often without wearing masks. Now, as much as 45% of

the staff are refusing to be vaccinated.

179.    Because staff at the prisons run by ODOC docked pay from prisoners that were

sick with COVID-19 and because prisoners that tested positive were either placed in the hole or

sent to other institutions (resulting in a loss of property and other benefits), prisoners were

discouraged from reporting symptoms or agreeing to receive tests. This pointlessly resulted in

further spread of COVID-19 through the institutions.

180.    As a direct and proximate result of ODOC's failure to undertake appropriate

safety measures, as well as ODOC's affirmative actions that placed plaintiffs at risk of infection,

plaintiffs contracted COVID-19.

181.    At EOCI, corrections staff were not wearing masks, did not properly sanitize or

take other precautions to prevent the spread of COVID-19. EOCI staff did not wear masks

routinely prior to the outbreak of cases there in October 2020. Staff routinely did not wash hands

or change gloves between searches of units and prisoners. No meaningful efforts were being

made to sanitize common areas or commonly used objects. The telephones and tablets were not

sanitized after use by prisoners. Prisoners from quarantine units worked in the kitchen, garment

factory, and the call center run by OCE. COVID-19 positive prisoners were known to be

working in the garment side of the OCE building. Nevertheless, the call center and garment

employees worked in the same building, use the same entrances, and were searched by the same

staff persons. Kitchen staff from quarantine units served food to prisoners from other units and

staff from other units served food to prisoners from quarantine units. Corrections staff at EOCI

were allowed to go to work sick.

182.    Corrections staff at EOCI routinely made comments downplaying the significance

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

of COVID-19 or espousing conspiracy theories about the virus. Many corrections staff called the pandemic an "election scare" and a hoax. Staff told plaintiff Wayne Woodruff that "the quicker everyone got it [meaning COVID-19] the better." Corrections staff routinely ignored COVID-19 symptoms of prisoners and did not alert medical.

183.    Staff did not impose any social distancing even where this was possible. Prisoners were being made to use the telephones a foot from one another and speaking without masks. Prisoners were packed inches from one another during meals. Prisoners lined up for meals and at other times with a foot or less.

184.    Similarly, OSCI staff routinely ignored social distancing and did not always wear masks. OSCI staff forced prisoners to go to meals, yard time, etc., in large numbers which made units commingle with no ability to socially distance.

185.    Staff at CRCI never imposed social distancing and allowed prisoners from other institutions into the facility without any testing or quarantine. As a result, dozens of prisoners, including several plaintiffs, contracted COVID-19 that could have been easily prevented.

186.    All the units in CRCI are dormitories ("dorms") with 70-80 prisoners each. The bunks are three feet apart and it is impossible to socially distance given the size of the rooms. When the prisoners line up for meals less than a foot or less separates them. Once the prisoners from DRCI arrived, COVID-19 began to rapidly spread through the institution. Many prisoners refused to receive tests because they would be sent to the hole and lose work and income.

187.    On September 8, 2020, more than 300 prisoners were evacuated from OSCI to OSP due to wildfires. They were transported in vans to OSP. Prisoners stood around until 10:45 p.m. when they went to the cafeteria and interacted with numerous prisoners from OSP—several fights broke out between prisoners from different institutions. Hours later at 2:00 a.m., the OSCI

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

prisoners were moved to a gymnasium where approximately 300 prisoners were made to sleep on the floor with inches separating one another. No pillows were provided, only smelly damp blankets that the prisoners were left to literally fight over. For the approximately 300 people, there were three toilets ("one shitter and two pissers" as the prisoners were informed by staff). Because of the long lines, prisoners were directed by staff to urinate in a bucket in the corner of the room. The gymnasium was filled with smoke and the prisoners were provided food and water contaminated with urine, spittle, blood, band aids and feces. Prisoners were not provided soap, toothpaste, or other hygiene products. The prisoners were not allowed to wash their closes or linens. Numerous prisoners from both OSP and OSCI were known to be infected with COVID-19 and yet large numbers of people were held in small unventilated cramped quarters.

188.    Numerous prisoners that tested positive for COVID-19 were transferred from EOCI to SRCI. Many of these prisoners have a history of mental illness that was exacerbated by their treatment at SRCI. Prisoners were confined to a cell for 23.5 hours per day and forced to wear the same soiled clothes for weeks at a time. They were given half-rations of food, and the lights were left on all night. They were not permitted to call loved ones and were deprived of their books, tablets, and other personal belongings. Many lost significant weight and suffered significant trauma and worsening of their mental health.

189.    Prisoners that were negative for COVID-19 working at the TRCI OCE laundry were required to work alongside prisoners that were COVID-19 positive. Prisoners from quarantine units or who had tested positive worked in the laundry and nonquarantine prisoners worked in the same space with not sanitization or social distancing. This resulted in numerous prisoners needlessly contracting COVID-19.

190.    The plaintiffs contracted COVID-19 as a result of defendants' failure to impose

reasonable and mandatory measures to protect prisoners from contracting COVID-19.

**Michael Abo**

191.    Mr. Abo was incarcerated at Deer Ridge Correctional Institution. He observed

staff not wearing masks, not imposing social distancing, and making statements downplaying the

severity of COVID-19. Infected prisoners were placed in his unit, and he was made to work with

and around infected prisoners. He observed that any prisoners who tested positive would be sent

to disciplinary segregation units at other facilities without their belongings and treated as if they

were being punished, so many prisoners were afraid to come forward if they were sick. Mr. Abo

was diagnosed with COVID-19 on December 19, 2021.

192.    Mr. Abo experienced fever, muscle and body aches, nerve pain, loss of taste and

smell, chest pain, headaches, confusion, memory loss, nausea, abdominal pain, congestion,

coughing, shortness of breath, fatigue, diarrhea, sore throat, and loss of appetite. He spent three

weeks in the hospital, and had to take a life flight to Bend, Oregon due to lung failure, weight

loss, esophagus tearing, and loss of vision. He still experiences diminished lung capacity, and he

must use a wheelchair to move around due to shortness of breath.

**Kyle Adams**

193.    Mr. Adams was on an alternative incarceration program unit. This is a dorm unit;

he was so close to other prisoners that he could roll over and touch the closest prisoner's bunk.

CRCI transferred a prisoner who was positive with COVID-19 onto the unit immediately

adjacent to Mr. Adams's unit. ODOC had tested the prisoner prior to the transfer but transferred

him before obtaining the results. Prisoners on Mr. Adams's unit interacted with this prisoner

because he was not quarantined even though he had tested positive. Symptomatic prisoners from

Mr. Adam's unit went to medical complaining of COVID-19 symptoms and were sent back to

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

his unit without being treated or quarantined. Prisoners would await test results on the unit for up to three days. CRCI corrections staff were not practicing social distancing or regularly wearing masks. As a consequence, prisoners on Mr. Adams's unit began contracting COVID-19. Mr. Adams developed COVID-19 symptoms in December 2020.

194.    Mr. Adams suffered severe aches, fever, joint pain, shortness of breath, persistent cough, headache, diarrhea, loss of appetite, and loss of smell and taste. Mr. Adams suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**James Adams-Leal**

195.    Mr. Adams-Leal was assigned as a dining room worker. He was housed in a unit that had no cases of COVID-19. One of his job duties involved cleaning the serving line and dining room. Mr. Adams-Leal was required to perform these tasks while quarantine units were present for meals. Mr. Adams-Leal informed the staff present that this exposed him to a higher risk of contracting COVID-19, because he was not able to avoid contact with quarantined prisoners. Shortly after being exposed to the quarantined prisoners during meals, he began to develop symptoms. EOCI staff routinely flouted and continue mask requirements, social distancing requirements and other precautions. On September 15, 2020, he tested positive for COVID-19.

196.    Mr. Adams-Leal suffered fatigue, fever, chills, headaches, and lost his senses of taste and smell. Mr. Adams-Leal began to suffer fatigue and decreased lung function after he initially recovered from COVID-19. Mr. Adams-Leal suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

PAGE 26 – SECOND AMENDED COMPLAINT

**Joel Albrecht**

197.    Mr. Albrecht was assigned as a dining room worker. He was housed in a unit that had no cases of COVID-19. One of his job duties involved cleaning the serving line and dining room. Mr. Albrecht was required to perform these tasks while quarantine units were present for meals. Mr. Albrecht informed the staff present that this exposed him to a higher risk of contracting COVID-19, because he was not able to avoid contact with quarantined prisoners. Shortly after being exposed to the quarantined prisoners during meals, he began to develop symptoms. It took four days of reporting symptoms to get sent to quarantine unit. On October 5, 2020, he tested positive for COVID-19.

198.    Mr. Albrecht suffered severe symptoms as a result of contracting COVID-19. Mr. Albrecht is often dizzy and light-headed. He lost his senses of taste and smell and had sore throat and congestion. Mr. Albrecht was transferred to SRCI without his personal possessions, was given no right to use the phone or outside recreation. Mr. Albrecht suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Daniel Alcazar**

199.    On September 8, 2020, Mr. Alcazar was evacuated to OSP due to wildfires. He was transported along with hundreds of other prisoners in vans to OSP. On his return to OSCI a prisoner in his dorm contracted COVID-19. Mr. Alcazar is immunocompromised and requested to be removed from the dorm. Mr. Alcazar repeatedly requested to be tested. Eventually, he was tested, and his test returned positive. He remained on the unit around other prisoners while he awaited the test results. Approximately 19 prisoners on his unit eventually caught COVID-19.

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

200.    Mr. Alcazar suffered severe symptoms as a result. Mr. Alcazar suffered chest pains, loss of sense of taste and smell, and had sore throat and congestion. Mr. Alcazar suffered from loss of mental acuity, body aches, migraines, shortness of breath. Mr. Alcazar went through 4 inhalers in 6 weeks and still suffers from shortness of breath. Mr. Alcazar suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Mohammed Ali

201.    On around December 1, 2020, a COVID-positive prisoner was placed on Mr. Ali's unit. That prisoner developed COVID symptoms, and he was left on the unit around COVID-19 negative prisoners for days. Shortly after the prisoner was placed on his unit, Mr. Ali developed flu-like symptoms, shortness of breath and other COVID symptoms. Mr. Ali requested to be seen by medical but was told, "No, you need to make an appointment" by the deputy on duty. When his symptoms worsened, Mr. Ali was told it was stress and heartburn. On December 8, 2020, Mr. Ali tested positive for COVID-19.

202.    Mr. Ali suffered body aches, respiratory problems, chills, headaches, stomach pain, and diarrhea. Mr. Ali was placed on respiratory isolation in a cell alone for hours. Mr. Ali suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Brett Andre

203.    Mr. Andre observed staff not wearing masks, making statements downplaying COVID, not imposing social distancing and placing inmates in close proximity to each other. He observed staff placing infected and quarantined inmates in his unit and staff placed Mr. Andre in a unit with infected inmates. Staff placed inmates awaiting test results in his unit. Mr. Andre was

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

made to work with and around infected and quarantined inmates. He tested positive for COVID-19 on October 3, 2020.

204.    Mr. Andre experienced fever, chills, body and muscle aches, nerve pain, loss of taste and smell, chest pain, headache, migraines, confusion, fog, blurred vision, congestion, coughing, shortness of breath, fatigue, diarrhea, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Jacob Anthony

205.    In September 2020, Mr. Anthony was not yet infected with COVID-19. Then, another prisoner, Christopher Lorenzen, *see infra*, who had tested positive for COVID-19 was placed on his unit. Shortly after placing Mr. Lorenzen on his unit, Mr. Anthony began to experience COVID-19 symptoms. On September 19, 2020, Mr. Anthony tested positive for COVID-19

206.    Mr. Anthony suffered body aches, shortness of breath, loss of sense of smell and taste, headaches, memory loss and cognitive problems. Mr. Anthony suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die alone from COVID-19.

### Howard Armitage

207.    Mr. Armitage was incarcerated at SCI. He observed staff not wearing masks, not imposing social distancing, and making statements downplaying the severity of COVID-19. Infected prisoners and prisoners awaiting test results were placed in his unit. He was made to work with and around infected prisoners. He went to meals with multiple units including sick individuals where kitchen workers were allowed to serve meals while showing signs of being COVID-19 positive. Mr. Armitage was diagnosed with COVID-19 in Spring of 2020, and

PAGE 29 – SECOND AMENDED COMPLAINT

transferred to OSP during the wildfires, where he was housed in close proximity with sick prisoners.

208.    Mr. Armitage experienced fever, muscle and body aches, nerve pain, loss of taste and smell, chest pain, headaches, confusion, memory loss, nausea, abdominal pain, congestion, coughing, shortness of breath, fatigue, sore throat, loss of appetite, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Tyler Bacon**

209.    Mr. Bacon was not tested at SCCF, but he experienced COVID-19 and flu-like symptoms such as shortness of breath and loss of taste and smell. Mr. Bacon was moved to OSCI where he worked in the kitchen. Kitchen staff included prisoners that worked on quarantine units working alongside prisoners that were not on quarantine units. Several kitchen staff and prisoners developed symptoms and still went to work. Kitchen staff served food to and handled the dishes of prisoners from quarantine units. In November 2020, Mr. Bacon again began to experience COVID-19 symptoms.

210.    On both occasions, Mr. Bacon suffered body aches, congestion, shortness of breath, loss of sense of smell and taste, headaches, soreness, and nausea. Mr. Bacon suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Giovanni Barr**

211.    Mr. Barr arrived at OSCI in July 2020, and staff and many prisoners were not wearing masks. On September 8, 2020, Mr. Barr was evacuated to OSP due to wildfires. On his return to OSCI, Mr. Barr worked in the kitchen. Kitchen staff included prisoners that worked on

PAGE 30 – SECOND AMENDED COMPLAINT

quarantine units working alongside prisoners that were not on quarantine units. Multiple staff members tested positive and were not being checked for symptoms on their entry to the facility. Several kitchen staff and prisoners developed symptoms and still went to work. A kitchen staff person contracted COVID-19 and worked with prisoners and staff. Mr. Barr was sent to CCCF for 21 days of quarantine due to his illness.

212.    Mr. Barr suffered loss of taste and smell, night sweats, major headaches, and body aches. Mr. Barr still suffers from body aches. Mr. Barr has asthma and suffered increased difficulty breathing. Mr. Barr still suffers from shortness of breath that necessitates more frequent use of his inhaler. Mr. Barr suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

## Tadario Battle

213.    In September 2020, Mr. Battle was not yet infected with COVID-19. Then, another prisoner, Mr. Lorenzen, who had tested positive for COVID-19 was placed on his unit. Shortly after placing Mr. Lorenzen on his unit, Mr. Battle began to experience COVID-19 symptoms. Mr. Battle tested positive for COVID-19 on October 10, 2020. While he was recovering from COVID-19, ODOC moved Mr. Battle to CCCF for quarantine. While at EOCI, staff were not enforcing social distancing with quarantined prisoners during mealtime when serving. Prisoners on quarantine units worked serving food in the kitchens to prisoners from other units. Staff did not change gloves between searches or routinely wear masks.

214.    Mr. Battle suffered sore throat, nausea, fatigue, headaches, and shortness of breath. He lost his sense of smell and taste for a month. Mr. Battle continues to experience fatigue and shortness of breath. Mr. Battle suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment, and fear that he would die from COVID-19.

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

**Jason Beaver**

215.     Mr. Beaver was incarcerated at CRCI. He observed staff not wearing masks, not imposing social distancing, and making statements downplaying the severity of COVID-19. Infected prisoners and prisoners awaiting test results, including Nicholas Hogan and Charles Withrow. He was placed in Unit 7 due to having to clear Unit 6 for COVID-19 quarantine. He was made to work with and around infected prisoners. He was served meals by kitchen workers showing signs of being COVID-19 positive. Mr. Beaver was diagnosed with COVID-19 on December 7, 2020.

216.     Mr. Beaver experienced fever, muscle and body aches, nerve pain, loss of taste and smell, chest pain, headaches, confusion, memory loss, nausea, abdominal pain, congestion, coughing, shortness of breath, fatigue, diarrhea, sore throat, loss of appetite, and severe emotional distress, anxiety, and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19. Mr. Beaver intended to go to chef's school and has still not recovered most of his senses of taste or smell.

**John Benge**

217.     In September 2020, Mr. Benge was not yet infected with COVID-19. Mr. Lorenzen, who had tested positive for COVID-19 was placed on his unit. Shortly after placing Mr. Lorenzen on his unit, Mr. Battle began to experience COVID-19 symptoms. Prisoners on his unit were not properly quarantined when they developed symptoms and were left to mingle with healthy prisoners. Benge tested positive for COVID-19 on October 12, 2020. EOCI staff were routinely refusing to wear masks and moving freely throughout the institution, including coming into contact with quarantined and infected prisoners. Mr. Benge suffered fatigue and shortness of

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

breath. He lost his sense of smell and taste which has still not recovered. Mr. Benge continues to experience fatigue, shortness of breath, and nose bleeds. Mr. Benge suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment, and fear that he would die from COVID-19.

### Robert Berno

218.    Mr. Berno has pre-existing conditions of asthma, sleep apnea and obesity. Mr. Berno was tested negative twice at CCCF and was kept there 55 days on intake status. Mr. Berno was briefly held at DRCI and then transferred to EOCI where he was placed on a dorm with active COVID-19 cases. Mr. Berno developed symptoms and tested positive for COVID-19 in October 2020.

219.    As a result of COVID-19, Mr. Berno suffered shortness of breath, fever, body aches, loss of appetite, fatigue, disorientation, loss of taste and smell, sweating and shaking. He was taken to infirmary for 2-3 days, then hospitalized at St. Anthony's Hospital in Pendleton for 5 days. Mr. Berno experienced panic attacks and needed to be put on oxygen to breathe properly. Mr. Berno suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### David Bertoch

220.    Mr. Bertoch was incarcerated at TRCI. He observed staff not wearing masks, not imposing social distancing, and making statements downplaying the severity of COVID-19. Infected prisoners and prisoners awaiting test results were placed in his unit. When his cell mate tested positive, he was left to reside in the contaminated cell. He went to meals with multiple units that included sick prisoners and where kitchen workers served meals while showing signs of being COVID-19 positive. Mr. Bertoch was diagnosed with COVID-19 on January 5, 2021.

PAGE 33 – SECOND AMENDED COMPLAINT

221.     Mr. Bertoch experienced fever, muscle and body aches, nerve pain, loss of taste and smell, chest pain, headaches, confusion, memory loss, nausea, abdominal pain, congestion, coughing, shortness of breath, fatigue, sore throat, loss of appetite, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19. He was given no treatment, and still experiences a persistent cough.

### James Bogosian

222.     Mr. Bogosian was incarcerated at OSCI. He was transferred to OSP, where he observed staff not wearing masks, not imposing social distancing, and making statements downplaying the severity of COVID-19. Infected prisoners and prisoners awaiting test results were placed in his unit. He went to meals with multiple units where kitchen workers served meals while showing signs of being COVID-19 positive.

223.     Mr. Bogosian experienced muscle and body aches, nerve pain, chest pain, headaches, confusion, memory loss, nausea, abdominal pain, congestion, coughing, shortness of breath, fatigue, sore throat, loss of appetite, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Oscar Canas

224.     Mr. Canas was incarcerated at EOCI. He was transferred to CCCF, where he observed staff not wearing masks, not imposing social distancing, and making statements downplaying the severity of COVID-19. Infected prisoners and prisoners awaiting test results were placed in his unit. He worked in the kitchen at EOCI daily with prisoners come from the CCCF quarantine units and exposed him to COVID-19. Mr. Canas tested positive for COVID-19 on September 23, 2020.

225.     Mr. Canas experienced muscle and body aches, nerve pain, chest pain, headaches,

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

memory loss, nausea, abdominal pain, congestion, coughing, shortness of breath, fatigue, loss of

appetite, and severe emotional distress and trauma caused by his illness, lack of appropriate

treatment and fear that he would die from COVID-19.

### Herman Carter

226.    Mr. Carter worked in the kitchens at EOCI. While at EOCI, staff were not

enforcing social distancing with quarantined prisoners during mealtime when serving. Prisoners

on quarantine units worked serving food in the kitchens to prisoners from other units. Mr. Carter

worked alongside prisoners who were sick with COVID symptoms but did not report this

because they did not want to go into isolation (the hole). Staff did not change gloves between

searches or routinely wear masks. Mr. Carter tested positive for COVID-19 on August 25, 2020.

While he was recovering from COVID-19, ODOC moved Mr. Carter to CCCF due to wildfires,

then moved to OSP where he was placed in a condemned DSU building (the building had

asbestos, black mold, rust in the water from old pipes, and lead paint). The water in the old DSU

was undrinkable. The air quality in the building exacerbated his COVID symptoms.

227.    Mr. Carter suffered headaches, shortness of breath, and chest pain and heartburn.

He lost his sense of smell and taste and has not recovered them. Mr. Carter suffered severe

emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he

would die from COVID-19.

### Christian Carey

228.    Mr. Carey worked in the kitchens at TRCI. While at TRCI, staff were not

enforcing social distancing with quarantined prisoners during mealtimes when serving. Prisoners

working in the kitchen were infected with COVID-19 and spread it to all the prisoners working

from his unit. Staff members were working on quarantine units and then working in

Law Offices of Daniel Snyder
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

nonquarantine units. TRCI staff did not change gloves between searches or routinely wear

masks. In January 2021, Mr. Carey interacted with a staff person who had been recently

interacting with known COVID exposed prisoners. Shortly after this encounter, Mr. Carey tested

positive for COVID-19 on January 12, 2021.

229.    Mr. Carey suffered headaches, body aches, shortness of breath, sweats, fever,

chills, abdominal pain, lose sense of smell and taste, mental confusion, loss of appetite, nausea,

high blood pressure, chest pain, and fatigue. Mr. Carey is at risk due to his asthma, edema, and

high blood pressure. He lost his sense of smell and taste and has not recovered them. Mr. Carey

suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment

and fear that he would die from COVID-19.

### Thomas Chambery

230.    Mr. Chambery was transferred from EOCI to CCCF, then to OSP due to wildfires.

At OSP, he was put into a cell that leaked sewage, 201A. When he returned to EOCI, his

cellmate tested positive for COVID-19 and was returned to their cell, rather than quarantine. Mr.

Chambery was diagnosed with COVID-19 on August 20, 2020. He continues to work around

infected prisoners in the kitchen.

231.    Mr. Chambery suffered headaches, body aches, shortness of breath, sweats, fever,

lost sense of smell and taste, loss of appetite, nausea, and continues to suffer respiratory issues,

vertigo, and thyroid issues. Mr. Chambery suffered severe emotional distress and trauma caused

by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Foy Chandler

232.    Mr. Chandler was transferred from OSCI to OSP due to the wildfires. He was

housed inside the E-Block at OSP. He was diagnosed with COVID-19 on January 17, 2021. He

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

observed staff not wearing masks, not imposing social distancing, and making statements
downplaying the severity of COVID-19. Infected prisoners were placed in his unit, and he was
made to work with and around infected prisoners.

233.    Mr. Chandler suffered headaches, body aches, shortness of breath, fever, lost
sense of smell and taste, loss of appetite, confusion, nausea, diarrhea, and fatigue. He still has
shortness of breath and his sense of smell has not fully returned. Mr. Chandler suffered severe
emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he
would die from COVID-19.

### Kevin Christ

234.    Mr. Christ was moved to OSP from OSCI due to wildfires. He observed staff not
wearing masks, not imposing social distancing, and making statements downplaying the severity
of COVID-19. Infected prisoners and prisoners awaiting test results were placed in his dorm with
beds closer than six feet apart. He was diagnosed with COVID-19 on or about October 22, 2020.

235.    Mr. Christ suffered headaches, shortness of breath, fever, confusion, nausea,
diarrhea, and fatigue. He still has shortness of breath. He is in college, and experiences
significantly more difficulty with homework due to increased "brain fog" than before he had
COVID-19. Mr. Christ suffered severe emotional distress and trauma caused by his illness, lack
of appropriate treatment and fear that he would die from COVID-19.

### Robert Clement

236.    Mr. Clement worked in the laundry facility. He was tested for COVID-19 on
January 11, 2021, so he could be cleared to go out for surgery. He was never informed of the
results of the test and did not go out for surgery. Instead, he returned to his job at the laundry,
and then on or about January 19, 2021 he was told to return from work and placed in quarantine.

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

The next day he was told he was positive for COVID-19.

237.    Mr. Clement suffered body aches, loss of taste and smell, headaches, shortness of breath, and fatigue. He still has not recovered his sense of smell and has difficulty breathing. Mr. Clement suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Shawn Cline**

238.    Mr. Cline observed staff not imposing social distancing at TRCI. Infected prisoners and prisoners awaiting test results were placed in his unit. There were no procedures for cleaning surfaces in the showers or kitchens, and kitchen staff was not wearing gloves resulting in food being served on contaminated plates and silverware. He tested positive for COVID-19 on January 20, 2021.

239.    Mr. Cline suffered body aches, headaches, fever, nerve pain, loss of taste and smell, confusion, memory loss, nausea, congestion, coughing, shortness of breath, fatigue, diarrhea, sore throat, and loss of appetite. He still has not recovered his sense of smell and has difficulty breathing, headaches, diarrhea, fatigue, and inability to focus. Mr. Cline suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Greg Coffman**

240.    Mr. Coffman was incarcerated at SCI. He was tested for COVID-19 on January 3, 2021 because prisoners around him in unit 3 were infected. He showed no symptoms and was sent to CCCI for ten days. All prisoners over the age of 60 were to be placed in unit 3 after the outbreak of COVID began. After his return to SCI from CCCI, he was placed in unit 4. There was no separation between prisoners who had tested positive for COVID-19 and those who had

PAGE 38 – SECOND AMENDED COMPLAINT

not been tested or refused the test. His third test came back positive for COVID-19.

241.    Mr. Coffman experienced headache, cough, diarrhea, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19. Mr. Coffman takes medication for Crohn's disease and experiences much worse headaches and diarrhea after having COVID-19.

### Derek Cole

242.    Mr. Cole was transferred in February 2020 from DRCI to EOCI. When he arrived at EOCI, corrections staff were not wearing masks, did not properly sanitize or take other precautions to prevent the spread of COVID. Prisoners from quarantine units worked in the kitchen, garment factory, and the call center run by OCE. These prisoners were working alongside prisoners from other units. Kitchen staff from quarantine units served food to prisoners from other units and staff from other units served food to prisoners from quarantine units. Prisoners were packed inches from one another during meals. As a result of EOCI staff's failure to abide by mandated precautions as well as affirmative actions taken to commingle sick and well prisoners, Mr. Cole tested positive for COVID-19 on October 3, 2020.

243.    At first, Mr. Cole was only slightly ill; he was placed on a quarantine unit for 6 days. Then he was transferred to SRCI. The first night he was there his oxygen dropped to dangerous levels and he was placed on supplemental oxygen. Mr. Cole became extremely ill and suffered fatigue, loss of appetite and severe headaches for days. Mr. Cole has a history of mental illness that was exacerbated by the illness. Mr. Cole was confined to a cell for 23.5 hours per day. He was forced to wear the same soiled clothes for 7 days and was given half-portion meals. Mr. Cole lost 20 pounds at SRCI. Mr. Cole suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

**James Coyle**

244.    Mr. Coyle was incarcerated at SCI. He observed staff not wearing masks, not imposing social distancing, and making statements downplaying the severity of COVID-19. Infected prisoners and prisoners awaiting test results were placed in his unit. He was made to work with and around infected prisoners. He went to meals with multiple units that included sick prisoners and where kitchen workers served meals while showing signs of being COVID-19 positive. Mr. Coyle was told multiple times when he reported feeling COVID-19 symptoms that he did not have COVID-19, but a common cold, until he lost ten pounds, and was eventually diagnosed with COVID-19 on May 25, 2020.

245.    Mr. Coyle experienced fever, muscle and body aches, nerve pain, loss of taste and smell, chest pain, headaches, confusion, memory loss, nausea, abdominal pain, congestion, coughing, shortness of breath, fatigue, sore throat, loss of appetite, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19. He was given no post COVID-19 medical follow up and continues to have difficulty breathing due to having asthma, which were made worse by COVID-19.

**Sky Crawford**

246.    Mr. Crawford observed staff not wearing masks, making statements downplaying COVID, not imposing social distancing and placing inmates in close proximity to each other. He observed staff placing infected and quarantined inmates in his dorm and staff placed Mr. Crawford in a dorm with infected inmates. Staff placed inmates awaiting test results in his dorm. He tested positive for COVID-19 in January 2021.

247.    Mr. Crawford experienced fever, chills, body and muscle aches, loss of taste and

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

smell, headache, migraines, confusion, fog, memory loss, congestion, coughing, shortness of breath, fatigue, diarrhea, loss of appetite, sore throat and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Carl Creech**

248.     Mr. Creech works in the laundry room at TRCI. He observed staff not wearing masks, not imposing social distancing, and making statements downplaying the severity of COVID-19. Infected prisoners and prisoners awaiting test results were placed in his unit. His whole unit became infected and was told to continue to work under threat of losing employment and housing assignments. Mr. Creech tested positive for COVID-19 on or about January 18, 2021.

249.     Mr. Creech experienced fever, muscle and body aches, nerve pain, loss of taste and smell, chest pain, headaches, confusion, memory loss, congestion, coughing, shortness of breath, fatigue, sore throat, loss of appetite, diarrhea, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19. He still suffers ongoing loss of smell, dizziness, shortness of breath and body aches.

**Todd Culver**

250.     Mr. Culver, who is 55 years old, worked in the kitchen at EOCI. On November 6, 2020, the corrections staff removed a prisoner from the serving line who had tested positive for COVID-19. Numerous staff in the kitchen at that time were not wearing masks over their noses and mouths. Nothing was done to enforce the mask policy. On November 11, 2020, Mr. Culver reported to the kitchen. Staff took his temperature and Mr. Culver reported flu-symptoms. Mr. Culver was sent to medical where staff told him that if he were tested, he would be sent to quarantine. Instead of testing him, the nurse had him go to his cell to rest and told him to check

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

to see how he was the following day. Mr. Culver reported to work the following day with worse symptoms. Kitchen staff told him to go ahead and work his full 9 hours shift. On the following day, Mr. Culver again reported to work with worse symptoms. Staff return him to his cell where medical tested him. Medical quarantined Mr. Culver and his cellmate pending the results. On November 15, 2020, Mr. Culver tested positive and was transported to CCCF.

251.    Mr. Culver suffered severe COVID-19 symptoms including, fever, chills, tightness in his chest, headache, earache, nausea, stomach cramps, muscle aches, joint pain, congestion, sore throat, sinus pressure, burning feeling in his lungs, itchy eyes, abdominal pain, numbness in extremities, ringing in his ears, dizziness, fatigue, diarrhea, and shortness of breath. His ringing in his ears is permanent due to the extended fever he suffered. Mr. Culver suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Daniel Cummings**

252.    At OSCI, prisoners, including Mr. Cummings, were made to sit immediately adjacent to other prisoners during meals and work around numerous prisoners and staff without any social distancing. On September 8, 2020, Mr. Cummings was evacuated to OSP because of wildfires. Back at OSCI, Mr. Cummings was placed on a unit that had infected prisoners and was placed in a cell that had just been vacated by a prisoner infected with COVID-19. In November 2020, Mr. Cummings began to experience COVID-19 symptoms; he tested positive on December 1, 2020. MR. Cummings was not quarantined for 2-3 days after taking the COVID test. ODOC moved Mr. Cummings to CCCF for treatment, but he was only given pain medication.

253.    Mr. Cummings has suffered congestion, loss of energy, difficulty breathing,

PAGE 42 – SECOND AMENDED COMPLAINT

ongoing body aches and pains, severe headaches, and constant nausea. Mr. Cummings suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Shawn Cutler

254.    Mr. Cutler observed staff not wearing masks, not imposing social distancing, and making statements downplaying the severity of COVID-19. Quarantined and non-quarantined units passed each other on narrow staircases. He was placed on a unit with infected prisoners and then tested positive for COVID-19 on or about August 19, 2020. After that he was transferred to Coffee Creek on August 28, 2020, and on September 11, 2020, transferred to OSP due to the wildfires and housed in a condemned building.

255.    Mr. Cutler experienced fever, muscle and body aches, loss of taste and smell, headaches, confusion, memory loss, congestion, coughing, shortness of breath, fatigue, sore throat, loss of appetite, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Chris Davis-McCoy

256.    Mr. Davis-McCoy observed staff not wearing masks at CRCI, and not imposing social distancing. He was made to work with and around quarantined prisoners who had tested positive for COVID-19. Prisoners from quarantined units and prisoners awaiting test results were placed on his unit. He then tested positive for COVID-19 on or about December 26, 2020.

257.    Mr. Davis-McCoy experienced fever, chills, muscle and body aches, confusion, congestion, coughing up blood, shortness of breath, fatigue, sore throat, loss of appetite, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19. He still experiences back and neck pain, shortness of breath,

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

and has developed headaches on a consistent basis.

### Leslie Degarmo

258.    In November 2020, Mr. Degarmo was moved into a cell with another prisoner. On

November 11, 2020, both Mr. Degarmo and his cellmate were tested. On November 13, 2020,

his cellmate tested positive, and Mr. Degarmo tested negative. Mr. Degarmo was left in the cell

with an infected prisoner. Mr. Degarmo was retested on November 18, 2020, and tested positive.

Mr. Degarmo is 61 years old. He was moved to CCCF. Mr. Degarmo personally observed other

uninfected prisoners being placed with COVID-19 infected prisoners resulting in the former

being infected. Two prisoners on his unit died.

259.    Mr. Degarmo suffered kidney pain, diarrhea, migraines, sore throat, runny nose,

constant fatigue, and mental confusion. Mr. Degarmo's mental state has not fully recovered and

may never do so. Mr. Degarmo suffered severe emotional distress and trauma caused by his

illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Xavier Deleon-Carbajal

260.    In September 2020, Mr. Deleon-Carbajal was hospitalized for diverticulitis. He

was discharged in September from the infirmary and sent to F2 mental health unit (MHU). MHU

had an active COVID outbreak at the time and there was no way for Mr. Deleon-Carbajal to

avoid breathing the same air or be in close proximity with other prisoners on the unit. Mr.

Deleon-Carbajal developed COVID-19 symptoms and tested positive on October 3, 2020. Mr.

Deleon-Carbajal was transferred to SRCI on October 6, 2020, and placed in Intensive

Management Unit (IMU) (also called "the hole"). He was treated as though he were being

disciplined; he was denied any cell sanitation or personal hygiene, telephone access, grievance

access, and showers. He was given half rations of food, and the lights were left on all night. He

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

lost 20 pounds in three weeks.

261.    Mr. Deleon-Carbajal suffered loss of taste and smell, fatigue, chills, cough, and congestion. Both his illness and his treatment at SRCI exacerbated Mr. Deleon-Carbajal's serious mental health issues. He suffered and continues to suffer anxiety, depression, panic attacks and nightmares. Mr. Deleon-Carbajal suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Justin Denney

262.    On October 7, 2020, Mr. Denney was transferred from Jackson County Jail to EOCI. After 14 days in segregation, Mr. Denney was placed on a quarantine unit with active COVID-19 cases. After being transferred to the quarantine unit, Mr. Denney began to experience COVID-19 symptoms. On October 24, 2020, Mr. Denney was tested and moved to a quarantine unit. Mr. Denney tested positive on October 26, 2020.

263.    Mr. Denney suffered loss of taste and smell, headaches, cough, severe body aches, night terrors, shivering and severe shortness of breath. Mr. Denney's symptoms have not fully subsided. Mr. Denney suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Zachary Draper

264.    Mr. Draper observed staff not imposing social distancing, and making statements downplaying the severity of COVID-19. Mr. Draper worked with and around prisoners who were infected and in quarantine. He was placed on a unit with infected prisoners and then tested positive for COVID-19 on or about December 31, 2020.

265.    Mr. Draper experienced fever, muscle and body aches, nerve pain, loss of taste and smell, chest pain, headaches, nausea, abdominal pain, congestion, coughing, shortness of

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

breath, fatigue, sore throat, diarrhea, loss of appetite, and severe emotional distress and trauma

caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Aaron Eaton

266.    Mr. Eaton observed staff not imposing social distancing, and making statements

downplaying the severity of COVID-19. In December of 2020, Mr. Eaton and his cellmate James

Hargrave had another prisoner in cell 22 who complained of not feeling well and told to deal

with it. Mr. Eaton began experiencing symptoms of COVID-19, and on December 31, 2020, he

was too ill to go to work. His cellmate Mr. Hargrave went to the hospital on January 4, 2021, and

later died. Mr. Eaton was tested on or about January 5, 2021, and informed on January 7, 2021,

the test was positive.

267.    Mr. Eaton experienced muscle pain, joint pain, throwing up, dizziness, loss of

appetite, loss of taste and smell, difficulty breathing, and severe emotional distress and trauma

caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

He still is experiencing shortness of breath, joint pain, and loss of taste and smell.

### Jeremy Eckhardt

268.    Mr. Eckhardt observed staff at TRCI not wearing masks, imposing social

distancing, and making statements downplaying the severity of COVID-19. He was made to

work with and around infected prisoners and prisoners on quarantine. He was told that the

correctional officers were unwilling to report symptoms due to having to miss time from work.

Mr. Eckhardt was tested on January 4, 2021 and told the result was positive on January 13, 2021.

269.    Mr. Eckhardt experienced muscle pain, joint pain, loss of appetite, loss of taste

and smell, difficulty breathing, and severe emotional distress and trauma caused by his illness,

lack of appropriate treatment and fear that he would die from COVID-19. He was unable to

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

defecate for twelve days and finally given milk of magnesia. He still is experiencing heart pain, heartbeat issues, and skin sensitivity.

**Hilmi Eladem**

270.    Mr. Eladem, who is 52 years old and diabetic, was housed in a dorm with 20 other prisoners. No social distancing was possible. Multiple officers at OSCI were coughing and appeared sick but were permitted to continue to work and refused to wear masks. Multiple staff members tested positive and were not being checked for symptoms on their entry to the facility. Prisoners, including Mr. Eladem, were served meals by prisoners from quarantine units and prisoners that had tested positive for COVID-19. Mr. Eladem repeatedly requested to be transferred given his age and comorbidities but was ignored. On October 15, 2020, Mr. Eladem began to experience COVID-19 symptoms, such as loss of taste and smell, and chills, and reported them to staff. For the first three days, staff ignored Mr. Eladem and told him he had a cold. Eventually, he was tested, and the test came back positive on October 23, 2020. Mr. Eladem was not quarantined pending the outcome of his test and was left around 20 or so other prisoners.

271.    Mr. Eladem suffered chest pain, back pain, fatigue, severe body aches, diarrhea, and heart burn. Mr. Eladem suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**David Endsley**

272.    On August 17, 2020, Mr. Endsley reported a sinus infection. He was given a COVID-19 test and told to wait for the results on C-1. Mr. Endsley told staff not to put him on C1, as there were active COVID cases on that unit. Given the lack of ventilation, and the proximity of prisoners, the open toilets, and lack of mask wearing, this presented a significant

PAGE 47 – SECOND AMENDED COMPLAINT

risk of infection. That test came back negative, but he was left on C1. Mr. Endsley was retested on August 21, 2020, and the result came back positive. Mr. Endsley was moved to CCCF on August 21, 2020, then moved to OSP on September 10, 2020. At OSP he was housed in the condemned DSU building. The water in the old DSU unit was undrinkable. The air quality in the building exacerbated his COVID symptoms. The only treatment he received was Gatorade and blood pressure and oxygen checks.

273.    Mr. Endsley suffered headaches, worsened vision, lower back pain, coughing, trouble with memory and recall, struggles with sleep and emotional state. Mr. Endsley's big toes turned black, and he lost the nails. Mr. Endsley suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Uvaldo Espericueta**

274.    Mr. Espericueta was transferred to OSP from OSCI due to the wildfires. He observed staff not wearing masks, and not imposing social distancing. He was made to work with and around quarantine prisoners who had tested positive for COVID-19. Prisoners from quarantined units and prisoners awaiting test results were placed on his unit. When he was in dorm 11, a COVID-19 positive prisoner was identified, and staff locked all twenty-six prisoners in that unit. All twenty-six of them soon tested positive for COVID-19.

275.    Mr. Espericueta experienced fever, chills, muscle and body aches, confusion, congestion, coughing up blood, shortness of breath, fatigue, sore throat, loss of appetite, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19. He still experiences memory loss.

**Ricky Exe**

276.    Mr. Exe was housed in a small dorm with 24 other prisoners—all of whom

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

eventually caught COVID-19. From the outset, staff at OSCI fought the requirement to wear masks and openly flouted the requirement. Prisoners' bunks were 3 feet apart. On September 8, 2020, Mr. Exe was transported along with hundreds of other prisoners in vans to OSP. Mr. Exe was returned to OSCI and placed again in a dorm with other prisoners that had been transferred and exposed at OSP. Shortly thereafter, plaintiff began to experience COVID-19 symptoms. On October 3, 2020, he tested positive for COVID-19.

277.    Mr. Exe suffered fever, congestion, cough, fatigue, and loss of taste and smell; he still is easily fatigued and has shortness of breath. Mr. Exe suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Craig Farquharson**

278.    Mr. Farquharson was incarcerated at CRCI. On December 1, 2020, a transport of prisoners from DRCI arrived at CRCI containing multiple prisoners that had tested positive for COVID-19. Mr. Farquharson tested positive on December 9, 2020; he was left on his unit for another day with other prisoners. This was common practice at the institution—prisoners that have received COVID-19 tests either are returned to their cells awaiting the results or are left in their cells after they have tested positive. This resulted in a predictable rapid spread of the virus through CRCI.

279.    Mr. Farquharson suffered shortness of breath, severe body aches, fever, lost sense of smell and taste, and fatigue. Mr. Farquharson still is unable to smell or taste fully and continues to experience shortness of breath. Mr. Farquharson suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

**Daniel Felton**

280.    Mr. Felton resides in a four-person cell. All four of the prisoners in his cell contracted COVID-19. The corrections officer on his unit tested positive and was returned to work on Mr. Felton's unit. The officer told him that he came in sick and told medical. Medical told the officer to keep working and that he could go home if he did not feel well. The Officer worked half the day, interacting with prisoners, without masks, and then went home. Officers on his unit were not screened, did not observe social distancing requirements, and did not consistently wear PPE. Mr. Felton tested positive on November 23, 2020, and was sent to quarantine unit.

281.    Mr. Felton suffered headaches, loss of smell and taste, fever, cough, shortness of breath, and low oxygen. Plaintiff suffers from severe mental illness and his illness and treatment exacerbated his mental health conditions. Mr. Felton suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Mickey Fiez**

282.    On September 8, 2020, Mr. Fiez was transported along with hundreds of other prisoners in vans to OSP. Mr. Fiez was returned to OSCI. Mr. Fiez works in the bakery and was constantly exposed to staff and prisoners without social distance or PPE. Bakery coordinator Mr. Wilson talks daily about how the virus is not airborne, not serious and promotes not wearing masks. Other staff routinely ignored mask policies and spoke in the presence of prisoners with their masks below their chins. In early November 2020, Mr. Fiez was housed in a cell with a recently infected prisoner still having COVID-19 symptoms. At around the same time, a prisoner

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

on Mr. Fiez's dorm became ill and his pleas for help were ignored. The prisoner was finally

tested and was positive for COVID-19. The rest of the dorm 4 was tested and positive. That

prisoner, and another, have since died. Mr. Fiez tested positive on November 12, 2020.

283.    Mr. Fiez suffers from ongoing shortness of breath. Mr. Fiez suffered severe

emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he

would die from COVID-19.

**Joseph Fletcher**

284.    Mr. Fletcher, who is 55 years old, worked in the kitchen and was Mr. Lorenzen's

roommate. EOCI staff were not enforcing social distancing with quarantined prisoners during

mealtime when serving. Prisoners on quarantine units went to work serving food in the kitchens

to prisoners from other units. Mr. Fletcher worked alongside prisoners who were sick with

COVID symptoms but did not report this because they did not want to go into isolation (the

hole). Kitchen staff served food to and interacted with prisoners from quarantine units. Staff did

not change gloves between searches or routinely wear masks. On September 13, 2020, Mr.

Lorenzen, who had tested positive for COVID-19, was sent back to Mr. Fletcher's cell. After Mr.

Lorenzen was left in his cell, Mr. Fletcher developed symptoms. Initially, Mr. Fletcher did not

agree to be tested because he was afraid of losing pay and being sent to the hole. Mr. Fletcher

was not allowed to go to work unless he tested so he agreed to be tested. In early October 2020,

he received the test. On October 13, he tested positive.

285.    Mr. Fletcher suffered shortness of breath, loss of taste and smell, headaches, sore

throat, body aches, fever, diarrhea, chills, and continuing pneumonia that turned to 2nd and then

3rd stage COPD. Also, his toenails turned black and fell off. Mr. Fletcher suffered severe

emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

would die from COVID-19.

**Basim Floro**

286.    Prisoners on Mr. Floro's unit developed symptoms and were ignored or not tested.

Symptomatic prisoners from Mr. Floro's unit went to medical complaining of COVID-19

symptoms and were sent back to his unit without being treated or quarantined. CRCI corrections

staff were not practicing social distancing or regularly wearing masks. Consequently, prisoners

on Mr. Floro's unit began contracting COVID-19. Mr. Floro developed COVID-19 symptoms in

December 2020.

287.    Mr. Floro suffered severe aches, fever, pain, shortness of breath, diarrhea,

vomiting, and loss of smell. He was the sickest he has ever been in his life. Both his illness and

his treatment at CRCI exacerbated Mr. Floro's serious mental health issues. He suffered and

continues to suffer anxiety, depression, panic attacks and nightmares. Mr. Floro suffered severe

emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he

would die from COVID-19.

**Daniel Fowler**

288.    EOCI staff did not practice social distancing or wearing masks regularly. Mr.

Fowler worked alongside prisoners that had tested positive and were going to work from their

quarantine units. Mr. Fowler lived in a dorm with the bunk beds situated right next to each other.

Prisoners were forced to shower 3 at a time in a 7-by-8-foot shower. In September 2020, the

prisoner in the bunk next to his started developing symptoms of COVID-19 infection. Mr.

Fowler could not distance himself from him. On September 24, 2020, Mr. Fowler started to

develop symptoms of COVID-19. He tested positive on October 1, 2020. Mr. Fowler was

transferred to SRCI and placed in segregation. He was treated as though he were being

PAGE 52 – SECOND AMENDED COMPLAINT

disciplined; he was denied any cell sanitation or personal hygiene, telephone access, grievance access, and showers. He was given half rations of food, and the lights were left on all night. He lost 10 pounds in three weeks. Mr. Fowler has a history of mental illness.

289.    Mr. Fowler suffered from diarrhea, severe headaches, shortness of breath, body aches, and loss of taste and smell. Both his illness and his treatment at CRCI exacerbated Mr. Fowler's mental illness. He suffered and continues to suffer anxiety, depression, panic attacks and nightmares. Mr. Fowler suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Quinton Franklin

290.    Mr. Franklin worked in the kitchens at EOCI. While at EOCI, staff were not enforcing social distancing with quarantined prisoners during mealtime when serving. Prisoners on quarantine units worked serving food in the kitchens to prisoners from other units. Mr. Franklin worked alongside prisoners who were sick with COVID-19 symptoms but did not report this because they did not want to go into isolation (the hole). Staff did not change gloves between searches or routinely wear masks. Mr. Franklin tested positive for COVID-19 on August 25, 2020. While he was recovering from COVID-19, ODOC moved Mr. Franklin to CCCF due to wildfires, then moved him to OSP where he was placed in a condemned DSU building (the building had asbestos, black mold, rust in the water from old pipes, and lead paint). Mr. Franklin did not drink water for days because the water in the old DSU was undrinkable. The air quality in the building exacerbated his COVID-19 symptoms.

291.    Mr. Franklin suffered headaches, shortness of breath, and loss of his senses of smell and taste. Mr. Franklin has ongoing shortness of breath and fatigue and developed loss of eyesight after recovering from COVID-19. Mr. Franklin suffered significant stress from being

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

put right back in the kitchens under the same conditions after recovering from COVID-19. Mr.

Franklin suffered severe emotional distress and trauma caused by his illness, lack of appropriate

treatment and fear that he would die from COVID-19.

**Scott Frazier**

292.    Mr. Frazier worked at the OCE laundry at TRCI. Prisoners that were on

quarantine units were working in the laundry and prisoners from nonquarantine units, including

Mr. Frazier, would work in the same space without any sanitization or disinfection between

shifts. Numerous prisoners that worked in the laundry contracted COVID-19. TRCI staff did not

consistently wear masks or other PPE while working. Staff came to work despite either having

COVID-19 symptoms or being exposed to people that tested positive for COVID-19. Numerous

prisoners demanded tests because they were experiencing symptoms. For three days staff

permitted employees at the laundry who were experiencing symptoms to go to work. On January

4, 2021, Mr. Frazier tested positive for COVID-19.

293.    Mr. Frazier suffered headache, chills, sweats, abdominal pain, body aches, severe

headaches, cough, diarrhea, mental fog, shortness of breath, and a loss of taste and smell. Mr.

Frazier continues to experience cough, shortness of breath, secondary infection, fatigue, and

diminished sense of smell and affected taste. Mr. Frazier suffered severe emotional distress and

trauma caused by his illness, lack of appropriate treatment and fear that he would die from

COVID-19.

**Terry Fuller**

294.    Mr. Fuller worked at the OCE laundry at TRCI. Prisoners that were on quarantine

units were working in the laundry and prisoners from nonquarantine units, including Mr. Fuller,

would work in the same space without any sanitization or disinfection between shifts. Numerous

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

prisoners that worked in the laundry contracted COVID-19. Numerous prisoners demanded tests because they were experiencing symptoms. For three days staff permitted Mr. Fuller and others who were experiencing symptoms to go to work. On January 7, 2021, Mr. Fuller tested positive for COVID-19.

295.    Mr. Fuller suffered chills, body aches, severe headaches, joint pain, shortness of breath, and a loss of taste and smell. Mr. Fuller continues to experience headaches, shortness of breath, fatigue, loss of appetite, and no smell and affected taste. Mr. Fuller suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Effie Fulton

296.    Ms. Fulton was incarcerated at CCCF and observed staff not imposing social distancing, and making statements downplaying the severity of COVID-19. Ms. Fulton worked with and around prisoners who were infected and in quarantine. She was not provided with any cleaning supplies when she moved into her cell. She was given a test on Friday, January 15, 2021, and given the positive result on Monday, January 18, 2021. In the days in between, she was with the general population while positive for COVID-19.

297.    Ms. Fulton experienced fever, muscle and body aches, loss of taste and smell, headaches, confusion, nausea, abdominal pain, congestion, coughing, shortness of breath, fatigue, sore throat, diarrhea, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that she would die from COVID-19. As longer-term effects, she still suffers from depression and irritability, constipation, and migraine headaches.

### Daniel Garcia

298.    Mr. Garcia was a lead cook and worked with people who showed symptoms and

PAGE 55 – SECOND AMENDED COMPLAINT

refused to get tested and were permitted to continue working. There were prisoners who tested positive and the people they were in direct contact with were not quarantined. On September 8, 2020, Mr. Garcia was evacuated to OSP due to wildfires. Shortly after his return to OSCI, Mr. Garcia began to experience COVID-19 symptoms. He tested positive on October 4, 2020, and was moved to CCIC for 19 days with no medical treatment.

299.    Mr. Garcia suffered from a cough, shortness of breath, fatigue, muscle and body aches, and loss of taste and smell. Mr. Garcia suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Daniel Garges

300.    Mr. Garges observed staff at TRCI not imposing social distancing, and making statements downplaying the severity of COVID-19. Mr. Garges worked with and around prisoners who were infected and in quarantine. His cellmate Troy Marin worked in the OCE laundry, when prisoners who were known to be infected with COVID-19 were allowed to continue working with non-quarantined prisoners. Mr. Garges then tested positive for COVID-19 on January 13, 2021.

301.    Mr. Garges experienced fever, muscle and body aches, loss of taste and smell, chest pain, headaches, nausea, abdominal pain, congestion, coughing, shortness of breath, fatigue, sore throat, loss of appetite, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Billy Garman

302.    Mr. Garman worked in the call center which is operated by OCE. He worked in the OCE building. COVID-19 positive prisoners were working in the garment side of the OCE building. The call center and garment employees worked in the same building, use the same

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

entrances, and were searched by the same staff persons. Mr. Garman complained to Officer

Jackson that quarantine workers were working in the garment side of the building. He responded

that, "Your option is to keep working or be fired." Mr. Garman could not afford to not work. On

September 28, 2020, started experiencing COVID-19 symptoms; he informed staff and they told

him to rest. For several days he remained in his cell and then was sent to C1 for quarantine. On

October 17, 2020, he received a positive COVID-19 test.

303.    Mr. Garman suffered shortness of breath, headaches, fever, chills, body aches,

and loss of taste and smell. Mr. Garman suffered severe emotional distress and trauma caused by

his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Douglas Gaskill

304.    Mr. Gaskill observed staff at EOCI not wearing masks, not imposing social

distancing, and making statements downplaying the severity of COVID-19. He worked with and

around prisoners who were infected and in quarantine. Prisoners who had not been properly

quarantined were placed on units which were previously clear of any COVID-19 infections. He

tested positive for COVID-19 on December 18, 2020. He was then moved to CCCF and placed

in a unit with other COVID-19 patients but received no proper medical checks.

305.    Mr. Gaskill experienced fever, muscle and body aches, loss of taste and smell,

chest pain, headaches, nausea, abdominal pain, congestion, coughing, shortness of breath,

fatigue, sore throat, diarrhea, loss of appetite, and severe emotional distress and trauma caused

by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Vaughn Gatchell

306.    Mr. Gatchell was placed on unit A4 in August 2020. He observed that prisoners

and guards were not wearing masks and that there was no enforced social distancing. Prisoners at

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

EOCI on quarantine units were being sent to work alongside prisoners from other units. Prisoners from quarantine units served food in the cafeteria to prisoners including Mr. Gatchell. No meaningful efforts were being made to sanitize common areas or commonly used objects. Corrections staff routinely made comments downplaying the significance of COVID-19 or espousing conspiracy theories about the virus. Mr. Gatchell developed COVID-19 symptoms around October 15, 2020. He tested positive on October 19, 2020.

307.    Mr. Gatchell suffered from days' long migraines, aches, loss of energy, fatigue, constipation, stomach pain, nausea, loss of appetite, and loss of smell and taste. Mr. Gatchell's smell and taste are permanently affected: everything smells either of smoke or mint and the only taste he has is of sweetness. Mr. Gatchell suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Uriah Gibson**

308.    In October 2020, Mr. Gibson was placed on a quarantined unit when he was not sick and had not been exposed. Shortly after having been placed on a quarantine unit, he started to develop COVID-19 symptoms. Mr. Gibson has a history of collapsed lungs and was told he could die if got sick. This caused Mr. Gibson severe stress.

309.    Mr. Gibson suffered loss of taste and smell and headaches. He still has headaches and a residual loss of smell and taste. Mr. Gibson suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Jacob Granger**

310.    Mr. Granger worked in the laundry room at EOCI and was made to handle, without gloves, the dirty laundry of prisoners who were infected with COVID-19. His housing unit would run out of soap for days at a time, and the entire unit at one point was lined up against

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

the wall a foot apart from each other for hours. He tested positive for COVID-19 on August 27, 2020. Then on September 10, 2020, he was transferred to the condemned building for eight days.

311.    Mr. Granger experienced fever, muscle and body aches, loss of taste and smell, chest pain, headaches, confusion, nausea, congestion, coughing, shortness of breath, fatigue, sore throat, diarrhea, loss of appetite, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Matthew Hanlon**

312.    Mr. Hanlon was incarcerated at TRCI and was placed in a unit with prisoners who were positive for COVID-19 while he did not have COVID-19. He was made to work with and around prisoners who were positive for COVID-19. He observed infected staff moving freely between units. He tested positive for COVID-19 on December 31, 2020.

313.    Mr. Hanlon experienced fever, muscle and body aches, loss of taste and smell, chest pain, headaches, confusion, nausea, congestion, coughing, shortness of breath, fatigue, diarrhea, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**John Harson**

314.    Mr. Harsen was incarcerated at OSCI and observed staff not wearing masks or enforcing social distancing. He was placed in a unit with prisoners who were positive for COVID-19 while he did not have COVID-19. He was made to work with and around prisoners who were positive for COVID-19. He tested positive for COVID-19 on or about October 27, 2020.

315.    Mr. Harsen experienced fever, muscle and body aches, nerve pain, loss of taste and smell, chest pain, headaches, confusion, memory loss, abdominal pain, nausea, congestion,

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

coughing, shortness of breath, fatigue, diarrhea, sore throat, loss of appetite, and severe

emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he

would die from COVID-19. Mr. Harsen continues to experience headaches, memory loss, and

loss of appetite.

### Cody Hatley

316.    Mr. Hatley was incarcerated at EOCI and observed staff not wearing masks or

enforcing social distancing. He was placed in a unit with prisoners who were positive for

COVID-19 while he did not have COVID-19. He was made to work with and around prisoners

who were positive for COVID-19. He tested positive for COVID-19 on or about November 1,

2020.

317.    Mr. Hatley experienced fever, muscle and body aches, loss of taste and smell,

headaches, nausea, congestion, coughing, fatigue, diarrhea, loss of appetite, and severe emotional

distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die

from COVID-19.

### Timothy Henkel

318.    Mr. Henkel is 51 years old. As a result of EOCI's failure to take appropriate

precautions, he contracted COVID-19 and tested positive on October 5, 2020. Mr. Henkel

suffered severe COVID-19 symptoms and was hospitalized. He experienced severe shortness of

breath and low oxygen (55%). He was placed on supplemental oxygen at St. Anthony's Hospital

for 6 days. He suffered from severe headaches, body aches and fatigue. He has permanent loss of

lung capacity and cannot walk for more than a few steps without being out of breath. Mr. Henkel

suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment

and fear that he would die from COVID-19.

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

**John Hermann**

319.    Mr. Hermann was incarcerated at TRCI and observed staff not wearing masks or enforcing social distancing, and making statements downplaying the seriousness of COVID-19 infection. He observed staff members searching multiple prisoners without changing gloves between searches. He tested positive for COVID-19 on or about January 4, 2021.

320.    Mr. Hermann experienced muscle and body aches, nerve pain, loss of taste and smell, congestion, coughing, fatigue, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19. Mr. Hermann continues to experience fatigue and loss of taste and smell.

**Terry Hickman**

321.    Mr. Hickman, who is 61 years old, worked alongside prisoners with COVID-19 symptoms from quarantine units. Prisoners infected with COVID-19 were placed on Mr. Henkel's unit. In September 2020, he began to experience COVID-19 symptoms. On September 27, 2020, he tested positive for COVID-19.

322.    Mr. Hickman suffered from severe shortness of breath, loss of motor skills, cough, headaches, and joint pain. Both his illness and his treatment at EOCI exacerbated Mr. Hickman's serious mental health issues. He suffered and continues to suffer anxiety, depression, and panic attacks. Mr. Hickman suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Norman Hoag**

323.    Mr. Hoag worked at the OCE laundry at TRCI. Prisoners that were on quarantine units were working in the laundry and prisoners from nonquarantine units, including Mr. Hoag,

PAGE 61 – SECOND AMENDED COMPLAINT

would work in the same space without any sanitization or delay between shifts. Numerous prisoners that worked in the laundry contracted COVID-19. Numerous prisoners demanded tests because they were experiencing symptoms. For three days staff permitted prisoners who were experiencing symptoms to go to work. On January 6, 2021, Mr. Hoag tested positive for COVID-19.

324.    Mr. Hoag suffered fever, chills, body aches, severe headaches, joint pain, shortness of breath, severe lack of oxygen, loss of taste and smell, vomiting, nausea, dizziness, mental confusion, short-term memory loss, bloody noses, and fatigue. Mr. Hoag continues to experience shortness of breath, fatigue, mental confusion, loss of memory, and no smell and affected taste. Mr. Hoag continues to suffer nose bleeds. Mr. Hoag suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Nicholas Hogan**

325.    Mr. Hogan is incarcerated at CRCI. On or about December 1, 2020, a transport of prisoners from DRCI arrived at CRCI containing multiple prisoners that had tested positive for COVID-19. Mr. Hogan tested positive on December 9, 2020, and was transferred to CCCF. At times, Mr. Hogan was unable to breathe and had to be given a steroid inhaler by a fellow prisoner in order to breathe.

326.    Mr. Hogan suffered headaches, fever, nausea, confusion, cold sweats, migraines, tremors, shortness of breath, severe body aches, fever, lost sense of smell and taste, and fatigue. Mr. Hogan continues to experience shortness of breath and body aches. Mr. Hogan suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

**Jeffrey Hoskins**

327.    Mr. Hoskins worked in the kitchen with people who showed COVID-19 symptoms and refused to get tested and were permitted to continue working. On September 8, 2020, Mr. Hoskins was evacuated to OSP due to wildfires. He returned to work in the kitchen in OSCI and was exposed at work to prisoners that tested positive. He was not notified that his coworkers had tested positive or that he had been exposed. He was forced to keep working regardless of his concerns—he would not be paid unless he went to work. Mr. Hoskins tested positive for COVID-19 on November 12, 2020.

328.    Mr. Hoskins suffered from severe shortness of breath, loss of smell and taste, body aches, and persistent headaches. He still has no sense of smell or taste and continues to experience shortness of breath. Mr. Hoskins suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Abel Ibarra-Franco**

329.    Mr. Ibarra-Franco was incarcerated at CRCI. On or about December 1, 2020, a transport of prisoners from DRCI arrived at CRCI containing multiple prisoners that had tested positive for COVID-19. Once the prisoners from DRCI arrived, COVID-19 began to rapidly spread through the institution. Many prisoners refused to receive tests because they would be sent to the hole and lose work and income. Mr. Ibarra-Franco tested positive on December 26, 2020, and was transferred to a different unit at CRCI.

330.    Mr. Ibarra-Franco has many underlying health conditions and is considered medically vulnerable. He suffered loss of sleep due to vomiting up blood, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die

Law Offices of Daniel Snyder
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

from COVID-19.

### Luther Jackson

331.    Mr. Jackson was incarcerated at SCI and observed staff making statements downplaying the severity of COVID-19. He was given a test on January 20, 2021 and was negative for COVID-19. He was placed in a unit with prisoners who were positive for COVID-19 while he did not have COVID-19. He was made to work with and around prisoners who were positive for COVID-19. He tested positive for COVID-19 on or about February 3, 2021.

332.    Mr. Jackson experienced fever, muscle and body aches, nerve pain, loss of taste and smell, chest pain, headaches, confusion, memory loss, abdominal pain, nausea, congestion, coughing, shortness of breath, fatigue, diarrhea, sore throat, loss of appetite, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Derrick Jay

333.    Mr. Jay lived in unit 11, a dorm of OSCI, which is filled to capacity. In October 2020, several members of prison staff that had tested positive went to work with COVID-19 symptoms. On several occasions, prisoners that tested positive or showed symptoms of COVID-19 were not quarantined and were instead left in their units causing the infection of the prisoners with whom they lived. On October 22, 2020, after showing symptoms, Mr. Jay was tested and returned to his unit to await results. The following day his test came back positive, and he was sent to a quarantine unit.

334.    Mr. Jay suffered from body aches, loss of energy, fatigue, shortness of breath, diarrhea, blurred vision, and loss of smell and taste. Mr. Jay suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

COVID-19.

### Daniel Johnson

335.    Mr. Johnson was incarcerated at TRCI. Mr. Johnson observed staff not wearing masks or enforcing social distancing. He was placed in a unit with prisoners who were positive for COVID-19 while he did not have COVID-19. He was made to work with and around prisoners who were positive for COVID-19. He tested positive for COVID-19 on October 15, 2020.

336.    Mr. Johnson experienced fever, muscle and body aches, loss of taste and smell, chest pain, headaches, nausea, congestion, coughing, shortness of breath, fatigue, loss of appetite, sore throat, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Ryan Johnson

337.    Mr. Johnson was incarcerated at EOCI. Corrections staff refused to wear masks regularly and openly claimed that they were not obligated to do so despite the Governor's order. Corrections staff did not impose any social distancing and did not consistently separate prisoners that were infected or exposed from the rest of the population. Prisoners from quarantine units and infected prisoners encounter prisoners in the halls, in common areas such as the chow hall and the area where the telephones are located. Corrections staff made no effort to sanitize commonly used or touched objects in the prison, such as telephones, and tablets. The cellmates of prisoners that have tested positive are not routinely being tested or quarantined. Prisoners on Mr. Johnson's unit tested positive for COVID-19 and were permitted by staff to interact with other prisoners on the unit. The prisoners were not required to socially distance, all but ensuring that other prisoners on Mr. Johnson's unit, including Mr. Johnson, would be infected with COVID-

Law Offices of Daniel Snyder
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

19. On October 16, 2020, Mr. Johnson tested positive for COVID-19 after experiencing symptoms.

338.    Mr. Johnson suffered from fever, chills, severe aches, heart/chest pain, headaches, difficulty breathing, fatigue, memory loss, loss of mental acuity, and dry cough. His breathing and body aches continue. Mr. Johnson suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Donald Jones**

339.    On September 8, 2020, Mr. Jones was transported along with hundreds of other prisoners in vans to OSP. Mr. Jones was returned to OSCI. An officer on his unit refused to wear a mask despite having been out sick with COVID-19 and did not stay home for the appropriate amount of time. Other staff routinely ignored mask policies and spoke in the presence of prisoners with their masks below their chins. Due to staff's lack of precautions, Mr. Jones tested positive on October 31, 2020.

340.    Mr. Jones suffered from severe shortness of breath and lack of oxygen. Mr. Jones suffered from cognitive impairment as a result and was hospitalized for a week in Wilsonville. Mr. Jones has ongoing shortness of breath and reduced lung capacity. Mr. Jones suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Randall Jordan**

341.    Mr. Jordan worked in the kitchen with people who showed COVID-19 symptoms and refused to get tested and were permitted to continue working. Prisoners who tested positive and the people they were in direct contact with were not always quarantined. Mr. Jordan observed that prisoners and guards were not always wearing masks and that there was no

Law Offices of Daniel Snyder
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

enforced social distancing. On September 8, 2020, Mr. Jordan was evacuated to OSP due to wildfires. He returned to work in the kitchen in OSCI and was exposed at work to prisoners that tested positive. He was not notified that his coworkers had tested positive or that he had been exposed. He was forced to keep working regardless of his concerns—he would not be paid unless he went to work. Mr. Jordan tested positive for COVID-19 on November 11, 2020. Mr. Jordan had pre-existing conditions that put him at increased risk of COVID-19 infection due to pneumonia.

342.    Mr. Jordan suffered from shortness of breath that is ongoing, chest pain and pain while breathing, and inflamed eczema. Mr. Jordan suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Michael Kelley

343.    Mr. Kelley is 53 years old. Corrections staff were aware that a prisoner infected with COVID-19 was on Mr. Kelley's unit and did not quarantine that prisoner. In August 2020, corrections staff failed to wear masks after working on C-1 unit—the quarantine unit. Staff did not observe social distancing, wear masks regularly, or sanitize the units. As noted above, prisoners were routinely in contact with prisoners from quarantine units, such as during unit transfers, yard times, and mealtimes. On August 19, 2020, Mr. Kelley tested positive for COVID-19. Mr. Kelley was transported to CCCF and then during the fires on September 8, 2020, was again transferred to the condemned DSU unit at OSP, which contained asbestos and black mold. The water in the condemned DSU was undrinkable. The air quality in the building exacerbated his COVID-19 symptoms.

344.    Mr. Kelley suffered from dangerously high blood pressure, shortness of breath and bronchial inflammation. Mr. Kelley suffered severe emotional distress and trauma caused by

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Alan Kentta**

345.    Mr. Kentta is 59 years old. In July 2020, because of ODOC's failure to impose safety restrictions, as alleged above, Mr. Kentta contracted and tested positive for COVID-19.

346.    Mr. Kentta suffered severe symptoms. He contracted double pneumonia. He suffered severe shortness of breath and low oxygen. Due to low oxygen and his poor reaction to the virus, he was intubated and placed on a ventilator for 16 days at Kadlec Medical Center in Tri-Cities, Washington. He continues to suffer extreme pain in his muscles, joints, and lungs. The medications and his condition caused anxiety, hallucinations, paranoia, which required anti-anxiety and psychotropic medication to treat. His illness has caused permanent damage and pain to muscles and joints. Mr. Kentta suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment, and fear that he would die from COVID-19.

**Sean Kiel**

347.    Mr. Kiel observed staff not wearing masks, not imposing social distancing and housing prisoners in close proximity to one other. Staff placed prisoners awaiting test results in his unit. Mr. Kiel was made to work with and around infected and quarantined prisoners. He tested positive for COVID-19 on December 5, 2020.

348.    Mr. Kiel experienced fever, body and muscle aches, loss of taste and smell, headaches, migraines, congestion, coughing, shortness of breath, fatigue, sore throat and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Lawrence King**

349.    Mr. King was exposed to COVID-19 by officers who refused to wear masks or

PAGE 68 – SECOND AMENDED COMPLAINT

socially distance sick prisoners and officers from healthy ones. Officers Taylor and Dircksen failed to wear masks after working on C-1 unit which was the quarantine unit and would come and work on Mr. King's unit. On July 7, 2020, the first case was documented on unit E3. Prisoners on Mr. King's unit started to get sick, and staff would test them and then put them back on the unit while they awaited the test results. Mr. King contracted COVID-19.

350.    As a result of contracting COVID-19, Mr. King suffered from loss of taste and smell, fever, headaches, and shortness of breath. Mr. King has ongoing shortness of breath. He is easily winded from exercise and is fatigued by normal activities. Mr. King suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment, and fear that he would die from COVID-19.

### Christopher Kittler

351.    Mr. Kittler arrived at OSCI in July 2020, and staff and many prisoners were not wearing masks. On September 8, 2020, Mr. Kittler was evacuated to OSP due to wildfires. On his return to OSCI, Mr. Kittler worked in the kitchen. Kitchen staff included prisoners that worked on quarantine units working alongside prisoners that were not on quarantine units. Multiple staff members tested positive and were not being checked for symptoms on their entry to the facility. Several kitchen staff and prisoners developed symptoms and still went to work. A kitchen staff person contracted COVID-19 and worked with prisoners and staff. Mr. Kittler was sent to CCCF for quarantine due to his illness.

352.    Mr. Kittler suffered loss of taste and smell, headaches, and body aches. Mr. Kittler still suffers from chest congestion and loss of smell and taste. His loss of smell and taste has resulted in loss of appetite. Mr. Kittler suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

**Kori Knisley**

353.    Mr. Knisley worked at the OCE laundry at TRCI. Prisoners that were on quarantine units were working in the laundry and prisoners from nonquarantine units, including Mr. Knisley, would work in the same space without any sanitization or disinfection between shifts. Numerous prisoners that worked in the laundry contracted COVID-19. Numerous prisoners demanded tests because they were experiencing symptoms. For three days staff permitted Mr. Knisley and others who were experiencing symptoms to go to work. On January 7, 2021, Mr. Knisley tested positive for COVID-19.

354.    Mr. Knisley suffered fever, chills, body aches, severe headaches, joint pain, shortness of breath, and a loss of taste and smell. Mr. Knisley continues to experience headaches, shortness of breath, fatigue, mental confusion, loss of memory, and no smell and affected taste. On more than one occasion, Mr. Knisley feared that he would die and knew other prisoners that died of COVID-19. Mr. Knisley suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Matthew Lamer**

355.    Mr. Lamer observed staff not wearing masks, making statements downplaying COVID, not imposing social distancing and placing inmates in close proximity to each other. He observed staff placing quarantined inmates in his unit and staff placed Mr. Lamer in a unit with infected inmates. Mr. Lamer was made to work with and around infected and quarantined inmates. He tested positive for COVID-19 on September 2, 2020.

356.    Mr. Lamer experienced fever, chills, body and muscle aches, nerve pain, loss of taste and smell, chest pain, headache, migraines, nausea, abdominal pain, congestion, shortness

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

of breath, fatigue, diarrhea, loss of appetite, sore throat and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Stanley Leonard

357.    Mr. Leonard was housed OSCI. On September 8, 2020, he was evacuated to OSP due to wildfires. When he returned from OSP, he was housed in segregation with other prisoners that had returned from CCCF and who were positive for COVID-19. Guards did not wear masks and no social distancing was imposed. Due to staff's lack of precautions, Mr. Leonard received a test on November 23, 2020 and tested positive on November 28, 2020.

358.    Mr. Leonard suffers from asthma, chronic bronchitis, and kidney disease. These conditions place him at higher risk for severe COVID-19 symptoms. He experienced severe chills, loss of smell and taste, fever, shortness of breath, severe body aches, nausea, headaches, migraines, dizziness, and fatigue. Mr. Leonard continues to experience dizziness, fatigue, shortness of breath, sores, and rashes. Mr. Leonard also has experienced chest pain and tachycardia. Mr. Leonard suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment, and fear that he would die from COVID-19.

### Christopher Lorenzen

359.    Mr. Lorenzen contracted COVID because of defendants' failure to impose appropriate measure to protect him. In September 2020, he developed symptoms of COVID-19. On September 11, 2020, he was placed on the C1 unit. He was on the unit for two days before he got his positive test back. He was told that they had made a mistake and that he was being sent back to C1. He exposed numerous other prisoners to COVID-19 during the two days he was on C1.

360.    Mr. Lorenzen suffered loss of smell and taste, fever, shortness of breath, chills,

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

body aches, headaches, and congestion. Mr. Lorenzen still does not have his sense of taste and smell and continues to have sharp pain his chest. He continues to have shortness of breath and is easily fatigued. Mr. Lorenzen suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment, and fear that he would die from COVID-19.

**Gerardo Luna-Benitez**

361.    Mr. Luna-Benitez observed staff not wearing masks, making statements downplaying COVID, not imposing social distancing and placing inmates in close proximity to each other. He observed staff placing infected inmates in his unit and staff placed Mr. Luna-Benitez in a unit with infected inmates. Staff placed inmates awaiting test results in his unit. Mr. Luna-Benitez was made to work with and around infected and quarantined inmates. He tested positive for COVID-19 on May 14, 2020.

362.    Mr. Luna-Benitez experienced body and muscle aches, chest pain, headache, migraines, memory loss, shortness of breath, fatigue, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19. Mr. Luna-Benitez has continuing fatigue, shortness of breath, and lack of ability to exercise.

**Mylo Lupoli**

363.    Mr. Lupoli worked in the kitchen and was exposed to prisoners both as coworkers and by serving food to quarantine units. Mr. Lupoli worked in the kitchen with prisoners from quarantine units and serving food to prisoners in quarantine units. Prisoners that were infected were forced to work and interact with uninfected prisoners. Mr. Lupoli was at heightened risk because of his age (61) and medical conditions. Mr. Lupoli contracted COVID-19 and tested positive on September 10, 2020.

364.    Mr. Lupoli has suffered severe and tragic complications due to COVID-19. He

PAGE 72 – SECOND AMENDED COMPLAINT

experienced severe shortness of breath, gasping for breath, fatigue, stabbing pain under his heart, chest pain, arrhythmia, weight loss (25 pounds in 20 days), arthritis in knees, back, fingers, shoulders, elbows, and neck, pneumonia, headaches, memory loss, fear of death, aches, pains, chills, fever, loss of taste and smell. Mr. Lupoli also suffered stroke because of his infection which caused hemiparesis. Mr. Lupoli suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Joseph Mace**

365.    Mr. Mace observed staff at EOCI not wearing masks, not imposing social distancing, and making statements downplaying the severity of COVID-19. Prisoners who had not been properly quarantined were placed on units which were previously clear of any COVID-19 infections. He tested positive for COVID-19 on September 18, 2020.

366.    Mr. Mace experienced coughing, sore throat, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**David Manley**

367.    Mr. Manley was housed OSCI. On September 8, 2020, he was evacuated to OSP due to wildfires. When he returned from OSP, he was housed in segregation with other prisoners that had returned from CCCF and who were positive for COVID-19. Guards did not wear masks and no social distancing was imposed. Due to staff's lack of precautions, Mr. Manley received a test on November 17, 2020 and tested positive on November 24, 2020.

368.    Mr. Manley suffers from diabetes, obesity, hypertension, and autoimmune disorders. These conditions place him at higher risk for severe COVID-19 symptoms or death. Mr. Manley had 4 strokes/transient ischemic attack episodes which has caused brain damage,

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

short term memory loss, emotional lability, as well as loss of function in his arm, eye, leg, and hand. He suffered acute anxiety, and feelings of panic, terror, doom, anger, rage, despair, hopelessness, and confusion. He experienced severe joint pain, severe body aches, abdominal pain, blood in his stool, diarrhea, incontinence, shortness of breath, nausea, and fatigue. Mr. Manley continues to experience trouble seeing, walking, using his right hand, fatigue, shortness of breath, weakness, and loss of balance. Mr. Manley suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment, and fear that he would die from COVID-19.

**Troy Marin**

369.    Mr. Marin was incarcerated at TRCI. Mr. Marin observed staff not wearing masks or enforcing social distancing. He observed prisoners being placed in close proximity to one another. He was made to work with and around prisoners who were quarantine units. He observed staff placing prisoners that were awaiting test results on his unit. He tested positive for COVID-19 on January 11, 2021.

370.    Mr. Marin experienced fever, muscle and body aches, nerve pain, loss of taste and smell, headaches, confusion, fatigue, loss of appetite, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Glen Marshall**

371.    Mr. Marshall was incarcerated at OSCI. Mr. Marshall observed staff not wearing masks, making statements downplaying COVID, not imposing social distancing and placing prisoners in close proximity to each other. He observed staff placing infected and quarantined prisoners in his unit and staff placed Mr. Marshall in a unit with infected prisoners. Staff placed prisoners awaiting test results in his unit. He tested positive for COVID-19 on October 11, 2020.

PAGE 74 – SECOND AMENDED COMPLAINT

He was transferred to OSP during the wildfires.

372.    Mr. Marshall experienced body and muscle aches, nerve pain, loss of taste and smell, chest pain, headache, migraines, confusion, fog, memory loss, nausea, congestion, coughing, shortness of breath, fatigue, loss of appetite, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Albert Marvitz

373.    Mr. Marvitz was incarcerated at TRCI. Mr. Marvitz observed staff not wearing masks, making statements downplaying COVID, not imposing social distancing and placing prisoners in close proximity to each other. He observed staff placing infected and quarantined prisoners on his unit. Staff placed prisoners awaiting test results in his unit. Mr. Marvitz was made to work with and around infected and quarantined prisoners. He tested positive for COVID-19 on January 3, 2021.

374.    Mr. Marvitz experienced fever, chills, body and muscle aches, loss of taste and smell, chest pain, headache, migraines, confusion, fog, memory loss, nausea, abdominal pain, congestion, coughing, shortness of breath, fatigue, diarrhea, loss of appetite, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19. He still has a cough, shortness of breath, fatigue, loss of stamina and mental confusion. Mr. Marvitz now experiences a worsening of his Crohn's disease.

### Matthew Mason

375.    On September 28, 2020, Mr. Mason was sent from unit A-2, which was not on quarantine at the time, to DSU. He did not have any symptoms of COVID-19 at that time. On October 7, 2020, he was transferred from DSU to unit B-4, which was then experiencing an outbreak of COVID-19 cases and on quarantine. Mr. Mason reported concerns to a correctional

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

officer and was told that he would be disciplined and sent to DSU if he did not go. Not wanting

to be punished, Mr. Mason complied and went to unit B-4. On or about October 10, 2020, Mr.

Mason was sent to work in the dining hall, where he worked alongside prisoners who were sick

with COVID-19 symptoms but did not report this because they did not want to go into isolation

(the hole). Kitchen staff served food to and interacted with prisoners from quarantine units. Mr.

Mason was not given PPE and had to sanitize after chow. He once again raised concerns and was

told that if he did not go to work, he would get daily fail and would lose privileges. On October

14, 2020, Mr. Mason was sent to be tested for COVID-19. He continued to reside on the unit

until October 16, 2020, when he received a positive test and was sent to unit C-1. He was only

given one cup of juice three times a day and told he would be off of quarantine in 10 days.

However, on October 19, 2020, Mr. Mason was sent to CCCF in a transport where only the

prisoners were wearing masks, EOCI staff were not wearing masks. Mr. Mason was only

allowed to bring one week's worth of hygiene products and remained at CCCF for at least 15

days with no personal property and sitting in a cell 21 hours a day.

376.    Mr. Mason suffered body aches, sweats, shortness of breath, extreme fatigue, loss

of sense of smell and taste, and continues to experience sinus problems. Mr. Mason suffered

severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear

that he would die from COVID-19.

### Eric McLain

377.    Mr. McLain was incarcerated at SRCI and TRCI at the time he contracted

COVID. Mr. McLain observed staff not wearing masks, making statements downplaying

COVID, not imposing social distancing and placing prisoners in close proximity to each other.

He observed staff placing infected and quarantined prisoners in his unit and in his cell and staff

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

placed Mr. McLain in a unit with infected prisoners. Staff placed prisoners awaiting test results in his unit/cell. He tested positive for COVID-19 in December 2020.

378.    Mr. McLain experienced fever, chills, body and muscle aches, nerve pain, loss of taste and smell, chest pain, headache, migraines, nausea, abdominal pain, congestion, coughing, shortness of breath, fatigue, diarrhea, loss of appetite, sore throat and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Brandon McLane

379.    In 2020, Mr. McLane worked in the kitchen and contracted COVID-19 due to working around infected prisoners. Mr. McLane did not immediately report his symptoms because he did not want to lose his housing and job. He was told that if he did not work, he would be fired and if he were fired, he would lose his preferential housing assignment.

380.    Mr. McLane suffered dry cough, fever, body aches, loss of taste and smell, and shortness of breath. Mr. McLane suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Dustin Mikalow

381.    Mr. Mikalow was incarcerated at TRCI. Mr. Mikalow observed staff not wearing masks, making statements downplaying COVID, not imposing social distancing and placing prisoners in close proximity to each other. He observed staff placing infected and quarantined prisoners in his dorm and staff placed Mr. Mikalow in a dorm with infected prisoners. Staff placed prisoners awaiting test results in his dorm. Mr. Mikalow was made to work with and around infected and quarantined prisoners. He tested positive for COVID-19 on December 7, 2020.

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

382.    Mr. Mikalow experienced fever, chills, body and muscle aches, nerve pain, loss of taste and smell, chest pain, headache, migraines, nausea, abdominal pain, congestion, coughing, shortness of breath, fatigue, diarrhea, loss of appetite, sore throat and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Peter Millard**

383.    On September 8, 2020, Mr. Millard was transported to OSP. Mr. Millard did not have any symptoms of COVID-19 until he was housed on unit 4, and prisoners known to be infected with COVID-19 began to be placed on his unit. Mr. Millard contracted COVID-19 on November 14, 2020, and was sent to CCCF. After ten days of no self-reported symptoms, Mr. Millard was returned to OSCI without being tested or quarantined.

384.    Mr. Millard suffered acute headaches, body aches, chills, coughing, sore throat, loss of taste and smell, fatigue, brain fog, lightheadedness, and continues to experience headaches, coughing, and loss of taste and smell. Mr. Millard suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Marvin Mitchell**

385.    On September 8, 2020, Mr. Mitchell was transported to OSP. Mr. Mitchell did not have symptoms of COVID-19 until after this transfer, and he tested positive on October 14, 2020.

386.    Mr. Mitchell suffered vomiting, dizziness, fever, sweats, headaches, body aches, loss of taste and smell, fatigue, and dizziness. Mr. Mitchell did not receive any help or treatment from OSP medical staff. Mr. Mitchell suffered severe emotional distress and trauma caused by

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

his illness, lack of appropriate treatment and fear that he would die from COVID-19.

## Raul Montejo

387.    Mr. Montejo observed staff not wearing masks, making statements downplaying COVID, not imposing social distancing and placing inmates in close proximity to each other. He observed staff placing infected and quarantined inmates in his unit and staff placed Mr. Montejo in a unit with infected inmates. Staff placed inmates awaiting test results in his unit. Mr. Montejo was made to work with and around infected and quarantined inmates. He tested positive for COVID-19 on December 20, 2020.

388.    Mr. Montejo experienced fever, chills, body and muscle aches, nerve pain, loss of taste and smell, chest pain, headache, migraines, confusion, fog, nausea, congestion, coughing, shortness of breath, fatigue, diarrhea, loss of appetite, sore throat and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

## Randall Mott

389.    Mr. Mott, who is 55 years old, was housed in unit 4 at OSCI when the COVID-19 pandemic began. Mr. Mott began wearing a mask on March 20, 2020, due to his increased risk of infection associated with radiation and chemotherapy he was receiving at Salem Hospital to treat throat cancer. Unit 4 was the unit used to quarantine prisoners with COVID-19. At most yard periods and in the dayroom, Mr. Mott was often the only person, or one of the very few individuals, wearing a mask. There were also no precautions taken when Mr. Mott was moved to OSP due to wildfires. Mr. Mott was diagnosed with COVID-19 on November 26, 2020, and transferred to CCCF, where the only treatment he received was a daily temperature and oxygen check, and Tylenol for body aches.

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

390.    Mr. Mott suffered dizziness, fever, nausea, sweats, headaches, body aches, loss of

taste and smell, and fatigue. He continues to experience diminished senses of taste and smell.

Mr. Mott did not receive any help or treatment from OSP medical staff. Mr. Mott suffered severe

emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he

would die from COVID-19.

**Robin Muir**

391.    Mr. Muir was incarcerated at TRCI. Mr. Muir observed staff not wearing masks,

making statements downplaying COVID, not imposing social distancing and placing prisoners in

close proximity to each other. He observed staff placing infected and quarantined prisoners in his

unit/cell and staff placed Mr. Muir in a unit/cell with infected prisoners. Staff placed prisoners

awaiting test results in his unit. Mr. Muir was made to work with and around infected and

quarantined prisoners. He tested positive for COVID-19 on January 22, 2021.

392.    Mr. Muir experienced fever, chills, body and muscle aches, nerve pain, loss of

taste and smell, headache, migraines, confusion, fog, nausea, congestion, shortness of breath,

fatigue, diarrhea, and severe emotional distress and trauma caused by his illness, lack of

appropriate treatment and fear that he would die from COVID-19.

**Leland Nicholson**

393.    While housed at EOCI, staff under the direction of Operations Captain placed a

prisoner in the bunk directly adjacent to his who had tested positive for COVID. Mr. Nicholson

complained since the bunk was approximately 4 inches away from his. Staff never moved the

infected prisoner. Shortly thereafter, Mr. Nicholson contracted COVID-19 and tested positive on

or about October 23, 2020.

394.    Mr. Nicholson suffered fever, chills, body aches, severe headaches, joint pain,

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

shortness of breath, and a loss of taste and smell. Mr. Nicholson continues to experience depression and loss of smell and affected taste. Mr. Nicholson suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

## Kyle Nonneman

395.    Mr. Nonneman was moved to OSP due to the Oregon Wildfires. The exposure to smoke worsened Mr. Nonneman's chronic asthma and impaired lung capacity from scoliosis conditions. Mr. Nonneman did not have any COVID-19 symptoms until he was moved to OSP and housed with a prisoner who was COVID-19 positive. Mr. Nonneman then tested positive for COVID-19 on October 20, 2020, and was transported to CCCF where he was housed in an open ventilation cell. When he returned to OSCI, he was not treated for a chest infection and instead given Prednisone, which caused psychotic behavior and weakened the immune system.

396.    Mr. Nonneman suffered shortness of breath, fatigue, and fears lung damage due to exposure to ash, smoke, and bear mace. Mr. Nonneman suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

## Joseph Ohrmund

397.    Mr. Ohrmund transferred from SRCI to OSCI on October 20, 2020, to attend Corban University. Mr. Ohrmund did not have any COVID-19 symptoms until he was on the IMU at SRCI. He routinely observed officers pass cordless phones and tablets from cell to cell without sanitizing the devices between use by the prisoners. The officer conducting intake at OSCI refused to wear a mask upon the intake process and delivery of his property to unit 1. Mr. Ohrmund tested positive for COVID-19 on October 20, 2020, at OSCI.

PAGE 81 – SECOND AMENDED COMPLAINT

398.    Mr. Ohrmund suffered fever, nausea, sweats, headaches, body aches, fatigue, sleep complications, and loss of taste and smell. Mr. Ohrmund suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Daniel Ortiz

399.    Mr. Ortiz was incarcerated at EOCI. Mr. Ortiz observed staff not wearing masks, making statements downplaying COVID, not imposing social distancing and placing prisoners in close proximity to each other. Staff placed Mr. Ortiz in a unit with infected prisoners. Staff placed prisoners awaiting test results in his unit. Mr. Ortiz was made to work with and around infected and quarantined prisoners. He tested positive for COVID-19 in October 2020.

400.    Mr. Ortiz experienced fever, chills, body and muscle aches, nerve pain, loss of taste and smell, chest pain, headache, migraines, fog, nausea, abdominal pain, congestion, coughing, shortness of breath, fatigue, diarrhea, loss of appetite, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Joshua Ovalle

401.    Mr. Ovalle was incarcerated at EOCI. Mr. Ovalle observed staff not wearing masks, making statements downplaying COVID, not imposing social distancing and placing prisoners in close proximity to each other. He observed staff placing infected and quarantined prisoners in his dorm and staff placed Mr. Ovalle in a dorm with infected prisoners. Staff placed prisoners awaiting test results in his dorm. Mr. Ovalle was made to work around infected and quarantined prisoners. He tested positive for COVID-19 on August 16, 2020.

402.    Mr. Ovalle experienced fever, chills, body and muscle aches, loss of taste and

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

smell, chest pain, headache, nausea, congestion, coughing, shortness of breath, diarrhea, loss of

appetite, sore throat and severe emotional distress and trauma caused by his illness, lack of

appropriate treatment and fear that he would die from COVID-19.

**Ryan Pearson**

403.    Mr. Pearson works in the kitchen at EOCI. EOCI staff were not enforcing social

distancing with quarantined prisoners during mealtime when serving. Prisoners on quarantine

units went to work serving food in the kitchens to prisoners from other units. Mr. Pearson

worked alongside prisoners who were sick with COVID-19 symptoms but did not report this

because they did not want to go into isolation (the hole). Kitchen staff served food to and

interacted with prisoners from quarantine units. Mr. Pearson tested positive for COVID-19 on

October 10, 2020. EOCI staff did not treat Mr. Pearson's symptoms other than given Ensures

twice a day, and daily temperature, blood pressure, and oxygen checks.

404.    Mr. Pearson suffered fever, nausea, sweats, headaches, body aches, fatigue, and

loss of taste and smell. Mr. Pearson suffered severe emotional distress and trauma caused by his

illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Mark Peck**

405.    Mr. Peck was incarcerated at CRCI. Mr. Peck observed staff not wearing masks,

making statements downplaying COVID, not imposing social distancing and placing prisoners in

close proximity to each other. He observed staff placing infected and quarantined prisoners in his

dorm and staff placed Mr. Peck in a dorm with infected prisoners. Staff placed prisoners

awaiting test results in his dorm. He tested positive for COVID-19 on December 21, 2020.

406.    Mr. Peck experienced body and muscle aches, nerve pain, chest pain, headache,

migraines, confusion, fog, memory loss, nausea, abdominal pain, fatigue, loss of appetite, and

Law Offices of Daniel Snyder
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Sean Pen**

407.    On July 5, 2020, corrections staff worked on the COVID-19 quarantine unit and then came and worked on Mr. Pen's unit without wearing a mask or other PPE. On July 7, 2020, two of the prisoners on the quarantine unit tested positive for COVID-19—those prisoners worked in the garment factory and the garment factory shut down for two days. Prisoners that worked with and had been exposed to the prisoners that had just tested positive were required to return to the garment factory. Some of those prisoners lived on Mr. Pen's unit. The officer in question continued to work both on the quarantine unit and Mr. Pen's unit without wearing a mask. Mr. Pen's unit passed quarantine units on the way to meals without any social distancing. Predictably, Mr. Pen and many other members of his unit caught COVID-19 and tested positive on August 27, 2020.

408.    Mr. Pen suffered shortness of breath, loss of taste and smell, cough, fever, body aches and fatigue. Mr. Pen suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Daniel Perry**

409.    Mr. Perry tested negative for COVID-19 while he was in the DSU for 128 days. When he was released, he was placed on unit A-3, which was housing individuals infected with COVID-19. Two people on the unit were removed to quarantine because of positive tests the day he arrived. Mr. Perry was again sent to DSU for a 14-day quarantine lockdown, and then again sent back to unit A-3. Several days after returning to A-3, Mr. Perry started feeling sick and tested positive for COVID-19. The institution did very little to treat his symptoms, other than

PAGE 84 – SECOND AMENDED COMPLAINT

giving Gatorade, and daily blood pressure and temperature checks. He was sent to SRCI and lost privileges including video visits with his family.

410.    Mr. Perry suffered fever, nausea, vomiting, headaches, body aches, fatigue, and difficulty breathing. Mr. Perry suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Anthony Person

411.    As a result of ODOC's failure to impose safety restrictions, as alleged above, Mr. Person tested positive for COVID-19 in October 2020. He was transported to SRCI and eventually taken to a hospital on a stretcher. Mr. Person observed staff not wearing masks, making statements downplaying COVID, not imposing social distancing and placing prisoners in close proximity to each other. He observed staff placing infected in his unit and staff placed Mr. Person in a unit with infected prisoners. Staff placed prisoners awaiting test results in his unit. He tested positive for COVID-19 on October 5, 2020.

412.    Mr. Person suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19. Mr. Person experienced fever, chills, body and muscle aches, nerve pain, loss of taste and smell, chest pain, headache, migraines, confusion, fog, memory loss, nausea, abdominal pain, congestion, coughing, shortness of breath, fatigue, diarrhea, loss of appetite, sore throat and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Joshua Postema

413.    Mr. Postema worked in the kitchen. Mr. Postema worked alongside prisoners who were sick with COVID-19 symptoms but did not report this because they did not want to go into

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

isolation (the hole). Kitchen staff served food to and interacted with prisoners from quarantine units. After Mr. Postema was diagnosed with COVID-19, he was transported to CCCF, where he was kept in a cell for 20-23 hours a day with no personal property; he was not able to bring any personal property because he was transported by ambulance. His cell had no running water for four days, and he had to kick and bang on the door to get a staff member's attention to be given one 8-ounce cup of water per day. Mr. Postema's symptoms started on October 1, 2020.

414.    Mr. Postema suffered from fever and a loss of taste and smell. He had a hard time breathing and had to climb 4 flights of stairs 3-4 times per day. Mr. Postema suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Ronald Powers**

415.    Mr. Powers worked in the kitchen. Mr. Powers worked alongside prisoners who were sick with COVID-19 symptoms but did not report this because they did not want to go into isolation (the hole). Kitchen staff served food to and interacted with prisoners from quarantine units. As a result of exposing him to infected prisoners, Mr. Powers contracted COVID-19 and tested positive on October 9, 2020.

416.    Mr. Powers suffered from fever and a loss of taste and smell. He had a hard time breathing and had to climb 4 flights of stairs 3-4 times per day. He suffered headaches, body aches and fatigue. He still has difficulty breathing and headaches. Mr. Powers suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Caleb Pratt**

417.    Mr. Pratt worked in the kitchen. EOCI staff were not enforcing social distancing

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

with quarantined prisoners during mealtime when serving. Prisoners on quarantine units went to

work serving food in the kitchens to prisoners from other units. Mr. Pratt worked alongside

prisoners who were sick with COVID-19 symptoms but did not report this because they did not

want to go into isolation (the hole). Kitchen staff served food to and interacted with prisoners

from quarantine units. Mr. Pratt was diagnosed with COVID-19 on October 21, 2020. He was

sent to CCCF and staff refused to allow him to see a lung specialist when his lungs were hurting,

and his breathing was impaired.

418.    Mr. Pratt suffered from fever and a loss of taste and smell. Mr. Pratt suffered

severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear

that he would die from COVID-19.

### Zachary Prauss

419.    Mr. Prauss was incarcerated at SCCF. Mr. Prauss observed staff not wearing

masks, not imposing social distancing, and placing prisoners in close proximity to each other. He

observed staff placing infected and quarantined prisoners in his unit and staff placed Mr. Prauss

in a unit with infected prisoners. Staff placed prisoners awaiting test results in his unit. Mr.

Prauss was made to work around infected prisoners. He tested positive for COVID-19 in April

2020.

420.    Mr. Prauss experienced fever, chills, body and muscle aches, nerve pain, loss of

taste and smell, headache, abdominal pain, shortness of breath, fatigue, loss of appetite, and

severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear

that he would die from COVID-19.

### Lonny Prince

421.    Mr. Prince worked in the kitchen. EOCI staff were not enforcing social distancing

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

with quarantined prisoners during mealtime when serving. Prisoners on quarantine units went to work serving food in the kitchens to prisoners from other units. Mr. Prince worked alongside prisoners who were sick with COVID-19 symptoms but did not report this because they did not want to go into isolation (the hole). Kitchen staff served food to and interacted with prisoners from quarantine units. Mr. Prince was diagnosed with COVID-19 on October 1, 2020. He was sent to SRCI and while he was there, his best friend died of COVID-19 complications.

422.    Mr. Prince suffered from severe headaches, body aches and cramps, fever, shortness of breath, and a loss of taste and smell. Mr. Prince suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Toren Pruden**

423.    Mr. Pruden was at CCCF he was exposed to COVID-19. He did not have any COVID-19 symptoms before ODOC staff went from unit to unit to pass out food. Medical staff came from the O-Unit, where prisoners with COVID-19 were housed, to help staff on other units pass out food with no sanitary measures. Prisoners touched medical equipment used to take vital signs and then staff passed the equipment to the next prisoner with no sterilization. He also observed that during sheet exchange, dirty sheets were accepted by a person through a slot, and this same person then then immediately touched the clean sheets handed out. Staff commented that they did not want to do anything that would make any extra work for them.

424.    Mr. Pruden suffered from severe headaches, body aches and cramps, fever, shortness of breath, and a loss of taste and smell. Mr. Pruden suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

PAGE 88 – SECOND AMENDED COMPLAINT

**Ancle Reed**

425.    Mr. Reed was incarcerated at SCI. Mr. Reed observed staff not wearing masks, making statements downplaying COVID, not imposing social distancing and placing prisoners in close proximity to each other. He observed staff placing infected in his unit and staff placed Mr. Reed in a unit with infected prisoners. Staff placed prisoners awaiting test results in his unit. Mr. Reed was made to work with and around infected prisoners. He tested positive for COVID-19 on January 20, 2021.

426.    Mr. Reed experienced fever, chills, body and muscle aches, loss of taste and smell, headache, nausea, congestion, fatigue, loss of appetite, sore throat and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Shawn Richey**

427.    Mr. Richey worked in the EOCI kitchen. At EOCI, corrections staff were not wearing masks, did not properly sanitize or take other precautions to prevent the spread of COVID-19. Prisoners from quarantine units worked in the kitchen, garment factory, and the call center run by OCE. These prisoners were working alongside prisoners from other units. Kitchen staff from quarantine units served food to prisoners from other units and staff from other units served food to prisoners from quarantine units. Prisoners were packed inches from one another during meals. Mr. Richey contracted COVID-19 in July or August 2020.

428.    Mr. Richey suffered from severe headaches, body aches and cramps, fever, fatigue, shortness of breath, and a loss of taste and smell. Mr. Richey suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

from COVID-19.

### Rocky Robison

429.    Mr. Robison worked in the OCE call center at EOCI. Mr. Robison has underlying health conditions that place him at risk for COVID-19, including, obesity, compromised immune system, history of lung infection. OCE staff allowed prisoners from quarantine units to work alongside other prisoners at the call center building. Staff allowed quarantine prisoners to work in the kitchen and elsewhere alongside nonquarantine prisoners. Multiple prisoners that were sick were taken to quarantine units for 7-10 days (fewer than is required by CDC guidelines) and then returned to Mr. Robison's unit without being retested. Prisoners from quarantine units served food to other prisoners. Staff did not have a mask mandate either for prisoners or staff. On August 5, 2020, Mr. Robison tested positive.

430.    Mr. Robison suffered severe COVID-19 symptoms including, shortness of breath, fever, chills, headache, nausea, muscle aches, dizziness, congestion, fatigue, diarrhea, and loss of taste and smell. He now uses two inhalers because of his condition and has not fully recovered his lung function. Mr. Robison suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Daniel Rodriguez

431.    Mr. Rodriguez was incarcerated at CRCI. Mr. Rodriguez observed staff making statements downplaying COVID, not imposing social distancing and placing prisoners in close proximity to each other. He observed staff placing infected prisoners in his unit and staff placed Mr. Rodriguez in a unit with infected prisoners. Staff placed prisoners awaiting test results in his unit. He tested positive for COVID-19 on December 20, 2020.

PAGE 90 – SECOND AMENDED COMPLAINT

432.    Mr. Rodriguez experienced fever, chills, night sweats, body and muscle aches, nerve pain, loss of taste and smell, chest pain, headache, confusion, fog, memory loss, nausea, vomiting, abdominal pain, congestion, coughing, shortness of breath, diarrhea, loss of appetite, sore throat and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Francisco Rodriguez

433.    On August 13, 2020, Mr. Rodriguez and his unit were free of COVID-19. On that day, staff placed a prisoner that was experiencing COVID-19 symptoms on his small unit while he awaited the results of his COVID-19 test. His test came back positive, and they removed him from the unit later that day. On August 16, 2020, Mr. Rodriguez began to experience COVID-19 symptoms. The following day he received a COVID-19 test. He was left on his unit pending the results, thus exposing the other prisoners on his unit. On August 21, 2020, his test came back positive and was sent to the hole in EOCI. On August 25, 2020, he was transferred to CCCF. When he left, he had a bad fever and could barely walk. Staff transporting him turned the heat up and let the prisoners endure extreme heat while they were suffering from fevers for hours. The prisoners were banging on the walls of the transport van but were ignored. The prisoners were dehydrated and were not fed during the trip. On September 10, 2020, the cell he was in started to fill with smoke. He and other prisoners were transported to OSP where they were housed in the condemned DSU building (the building had asbestos, black mold, rust in the water from old pipes, and lead paint). The water in the old DSU was undrinkable. The air quality in the building exacerbated his COVID symptoms. H was left with no clean clothes or showers for five days.

434.    Mr. Rodriguez suffered from of congestion, coughing, fatigue, sore throat and fever. Mr. Rodriguez suffered severe emotional distress and trauma caused by his illness, lack of

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

appropriate treatment and fear that he would die from COVID-19.

### Jacob Rogers

435.     Mr. Rogers was incarcerated at EOCI. Mr. Rogers observed staff not wearing

masks, making statements downplaying COVID, not imposing social distancing and placing

prisoners in close proximity to each other. He observed staff placing infected and quarantined

prisoners in his unit and staff placed Mr. Rogers in a unit with infected prisoners. Staff placed

prisoners awaiting test results in his unit. Mr. Rogers was made to work with and around infected

and quarantined prisoners. He tested positive for COVID-19 on October 13, 2020.

436.     Mr. Rogers experienced fever, chills, body and muscle aches, nerve pain, loss of

taste and smell, chest pain, headache, nausea, abdominal pain, congestion, coughing, shortness of

breath, fatigue, diarrhea, loss of appetite, and severe emotional distress and trauma caused by his

illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Clayton Salikie

437.     Mr. Salikie was incarcerated at SCI. Mr. Salikie observed staff not wearing

masks, making statements downplaying COVID, not imposing social distancing and placing

prisoners in close proximity to each other. He observed staff placing infected and quarantined

prisoners in his dorm and staff placed Mr. Salikie in a dorm with infected prisoners. Staff placed

prisoners awaiting test results in his dorm. Mr. Salikie was made to work with and around

infected and quarantined prisoners. He tested positive for COVID-19 on February 3, 2021.

438.     Mr. Salikie experienced fever, chills, body and muscle aches, loss of taste and

smell, chest pain, headache, congestion, coughing, shortness of breath, fatigue, sore throat and

severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

that he would die from COVID-19. Mr. Salikie continues to have more frequent headaches than usual.

**Kelly Sansburn**

439.    Mr. Sansburn was incarcerated at SCI. Mr. Salikie observed staff not wearing masks, making statements downplaying COVID, not imposing social distancing and placing prisoners in close proximity to each other. He observed staff placing infected and quarantined prisoners in his dorm and staff placed Mr. Sansburn in a dorm with infected prisoners. Staff placed prisoners awaiting test results in his dorm. Mr. Sansburn was made to work with and around infected and quarantined prisoners. He tested positive for COVID-19 on February 3, 2021.

440.    Mr. Sansburn experienced fever, chills, body and muscle aches, nerve pain, loss of taste and smell, chest pain, headache, migraines, confusion, fog, memory loss, nausea, abdominal pain, congestion, coughing, shortness of breath, fatigue, diarrhea, loss of appetite, sore throat and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19. Mr. Sansburn continues to experience fever, chills, body and muscle aches, nerve pain, chest pain, migraines, confusion, fog, memory loss, congestion, shortness of breath, and fatigue.

**Kurtis Self**

441.    Mr. Self was incarcerated at TRCI. Mr. Self observed staff not wearing masks, making statements downplaying COVID, not imposing social distancing and placing prisoners in close proximity to each other. He observed staff placing infected and quarantined prisoners in his unit. Staff placed prisoners awaiting test results in his unit. He tested positive for COVID-19 on January 5, 2021.

PAGE 93 – SECOND AMENDED COMPLAINT

442.    Mr. Self experienced fever, chills, body and muscle aches, loss of taste and smell, chest pain, headache, confusion, fog, nausea, abdominal pain, congestion, coughing, shortness of breath, fatigue, diarrhea, loss of appetite, sore throat and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Roy Shinall**

443.    Mr. Shinall worked in the kitchens at EOCI. While at EOCI, staff were not enforcing social distancing with quarantined prisoners during mealtime when serving. Prisoners on quarantine units worked serving food in the kitchens to prisoners from other units. Mr. Shinall worked alongside prisoners who were sick with COVID symptoms but did not report this because they did not want to go into isolation (the hole). Staff did not change gloves between searches or routinely wear masks. Mr. Shinall tested positive for COVID-19 in October 2020. While he was recovering from COVID-19, ODOC moved Mr. Shinall to CCCF for quarantine.

444.    Mr. Shinall suffered body aches, high fever, chills, migraines, headaches, and shortness of breath. He lost his sense of smell. Mr. Shinall continues to experience loss of hearing in his right ear, blurred vision, and shortness of breath. Mr. Shinall suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment, and fear that he would die from COVID-19.

**Maxville Sinclair**

445.    Mr. Sinclair, who is 58 years old, was housed in unit 4 at OSCI when the COVID-19 pandemic began. Unit 4 was the unit used to quarantine prisoners with COVID-19. Mr. Sinclair was exposed to prisoners with COVID-19 in the unit. Mr. Sinclair was transported to OSP in September 2020, due to wildfires; no precautions taken when he was moved to OSP. Prisoners were transported in vans and were housed with prisoners from quarantine units and

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

with prisoners that were positive for COVID-19. Mr. Sinclair was diagnosed with COVID-19 on

November 20, 2020, and transferred to CCCF. Mr. Sinclair was transported back to OSCI while

still symptomatic and without receiving a test.

446.    Mr. Sinclair suffered fever, headaches, body aches, nausea, vertigo, joint pain,

and fatigue. He continues to experience headaches and body aches. Mr. Sinclair suffered severe

emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he

would die from COVID-19.

### Gary Sloan

447.    On September 8, 2020, Mr. Sloan was transported along with hundreds of other

prisoners in vans to OSP. On his return, Mr. Sloan was housed in unit 4 with prisoners confirmed

to be positive for COVID-19. Mr. Sloan tested positive for COVID-19.

448.    Mr. Sloan suffered severe headaches, body aches and cramps, fever, shortness of

breath, and a loss of taste and smell. Mr. Sloan suffered severe emotional distress and trauma

caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Adam Smith

449.    At OSCI, Mr. Smith was made to sit immediately adjacent to other prisoners

during meals and work around numerous prisoners and staff without any social distancing. On

September 8, 2020, Mr. Smith was evacuated to OSP because of wildfires. Back at OSCI, Mr.

Smith was placed on a unit that had infected prisoners and was placed in a cell that was

immediately between two prisoners that were COVID-19 positive. The cells shared the same air

supply. Shortly thereafter on around November 18, 2020, Mr. Smith began to experience

COVID-19 symptoms; he was tested on November 25, 2020, and the test came back positive on

November 29, 2020. ODOC moved Mr. Smith to CCCF for treatment, but he was only given

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

pain medication.

450.    Mr. Smith has suffered congestion, loss of energy, difficulty breathing, ongoing body aches and pains, severe headaches, loss of smell and taste, and dizziness. A close friend of Mr. Smith's died one day before his release date. Mr. Smith suffered from panic attacks because of his experience. Mr. Smith suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Brett Smith**

451.    On his return to OSCI, plaintiff, Mr. Smith, worked in the dining hall wiping tables. Multiple staff members tested positive and were not being checked for symptoms on their entry to the facility. Several kitchen staff and prisoners developed symptoms and still went to work. A kitchen staff person contracted COVID-19 and worked with prisoners and staff. Mr. Smith was housed in unit 4, where prisoners were sent when they tested positive for COVID-19. Mr. Smith was also transported to OSP on September 8, 2020, due to the fires, and was housed for two nights on the E-Block. Mr. Smith tested positive for Covid-19 on November 11, 2020.

452.    Mr. Smith suffered severe headaches, body aches and cramps, fever, shortness of breath, and a loss of taste and smell. Mr. Smith suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Nathaniel Smith**

453.    Mr. Smith worked at the OCE laundry at TRCI. Prisoners that were on quarantine units were working in the laundry and prisoners from nonquarantine units, including Mr. Smith, would work in the same space without any sanitization or separation. Prisoners on Mr. Smith's unit displayed symptoms of COVID-19, but only half of the prisoners agreed to be tested. None of these prisoners were separated or quarantined. In August 2020, Mr. Smith initially tested

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

negative but was still made to live in a dorm with prisoners with COVID-19 symptoms. He was also required to work alongside prisoners from quarantine units. In September 2020, Mr. Smith tested positive for Covid-19.

454.    Mr. Smith suffered chills, cough, fever, headaches, body aches, shortness of breath, and a loss of taste and smell. Mr. Smith was so sick he was sent to Good Shephard's Hospital in Hermiston, Oregon. His oxygen was so low he needed supplemental oxygen for a week. Mr. Smith has ongoing symptoms of fatigue, and coughing. Mr. Smith has ongoing symptom of sore mouth which he did not experience before contracting COVID-19. Mr. Smith suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Robert Stewart

455.    Mr. Stewart was incarcerated at EOCI. Mr. Stewart observed staff not wearing masks, making statements downplaying COVID, not imposing social distancing and placing prisoners in close proximity to each other. He observed staff placing infected and quarantined prisoners in his unit. Staff placed prisoners awaiting test results in his unit. Mr. Stewart was made to work with and around infected and quarantined prisoners. He contracted COVID-19 in July 2020.

456.    Mr. Stewart experienced fever, chills, body and muscle aches, loss of taste and smell, headache, migraines, confusion, fog, congestion, coughing, shortness of breath, fatigue, diarrhea, loss of appetite, sore throat and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19. Mr. Stewart continues to experience fatigue and loss of his sense of taste.

### Peter Strother

PAGE 97 – SECOND AMENDED COMPLAINT

457.    Mr. Strother was incarcerated at TRCI. Mr. Strother observed staff not wearing masks, making statements downplaying COVID, not imposing social distancing and placing prisoners in close proximity to each other. He observed staff placing infected and quarantined prisoners in his unit and staff placed Mr. Strother in a unit with infected prisoners. Staff placed prisoners awaiting test results in his unit. He began experiencing COVID-19 symptoms on February 20, 2021.

458.    Mr. Strother experienced fever, chills, body and muscle aches, nerve pain, loss of taste and smell, chest pain, headache, migraines, confusion, fog, abdominal pain, coughing, shortness of breath, fatigue, diarrhea, loss of appetite, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19. Mr. Strother continues to suffer loss of his senses of taste and smell, fatigue and dizziness/light-headedness.

**Matthew Stockwell**

459.    Mr. Stockwell was transported to EOCI from OSP on October 2, 2020. He had tested negative for COVID-19 at OSP, yet was placed in A-3 at EOCI, which was on active COVID-19 quarantine. There were units available that were not on quarantine that could have housed Mr. Stockwell. After testing positive for COVID-19, Mr. Stockwell was placed in a DSU and treated as if being disciplined. He was only given Gatorade and Ensure, along with temperature, oxygen and blood pressure checks.

460.    Mr. Stockwell suffered severe headaches, body aches and cramps, fever, shortness of breath, and a loss of taste and smell. Mr. Stockwell suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

**Mark Templeton**

461.    Mr. Templeton was incarcerated at OSCI. Mr. Templeton observed staff not wearing masks, making statements downplaying COVID, not imposing social distancing and placing prisoners in close proximity to each other. He observed staff placing infected and quarantined prisoners in his unit and staff placed Mr. Templeton in a cell with an infected prisoner. Staff placed prisoners awaiting test results in his unit.

462.    Mr. Templeton experienced confusion, fog, fatigue, dizziness, and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Ryan Thomas**

463.    Mr. Thomas was housed at SRCI. Due to an outbreak at the facility, the prisoners were on single cell quarantine, meaning they were confined to their cells 24 hours a day and had no interaction with other prisoners. Nevertheless, medical staff would go from the cell to cell taking temperatures and handing prisoners oxygen meters. But when they did, they did not sanitize the devices between prisoners. Similarly, corrections staff would pass telephones and tablets to prisoners without wiping them down or sanitizing them between prisoners. Mr. Thomas contracted COVID-19 and tested positive on October 20, 2020.

464.    Mr. Thomas lost his sense of smell and taste and experienced shortness of breath. Mr. Thomas suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Freddie Tillett**

465.    Mr. Tillett was incarcerated at TRCI. Mr. Tillett observed staff not wearing

PAGE 99 – SECOND AMENDED COMPLAINT

masks, making statements downplaying COVID, not imposing social distancing and placing prisoners in close proximity to each other. He observed staff placing infected and quarantined prisoners in his cell. Staff placed prisoners awaiting test results in his unit. He tested positive for COVID-19 on December 9, 2021.

466.    Mr. Tillett experienced fever, chills, body and muscle aches, nerve pain, loss of taste and smell, chest pain, headache, migraines, confusion, fog, memory loss, nausea, abdominal pain, congestion, coughing, shortness of breath, fatigue, diarrhea, loss of appetite, sore throat and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Edward Townsend

467.    Mr. Townsend had a temperature of 98 and was put in a quarantine cell with another prisoner. Both prisoners were tested; the other prisoner tested positive; he tested negative. EOCI staff left him in the cell for 18 hours and then released him to general population. He subsequently tested positive for COVID-19 in October 2020. He was transferred to SRCI and placed in IMU. He was treated as though he were being disciplined; he was denied any cell sanitation or personal hygiene, telephone access, grievance access, and showers. He was given half rations of food, and the lights were left on all night. This significantly affected his mental health. He suffered and continues to experience depression and thoughts of death.

468.    Mr. Townsend suffered body aches, shortness of breath, cough, fever, nausea, headaches, and loss of taste and smell. Mr. Townsend suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Bryan Trimble

PAGE 100 – SECOND AMENDED COMPLAINT

469.    Mr. Trimble observed staff not wearing masks, making statements downplaying COVID, not imposing social distancing and placing prisoners in close proximity to each other. He observed staff placing infected and quarantined prisoners in his unit and staff placed Mr. Trimble on a unit with infected prisoners. Staff placed prisoners awaiting test results in his unit. Mr. Trimble was made to work with and around infected and quarantined prisoners. He tested positive for COVID-19 on January 16, 2021.

470.    Mr. Trimble experienced fever, chills, body and muscle aches, nerve pain, a metallic taste in his mouth, chest pain, headache, migraines, confusion, fog, memory loss, nausea, cramps, congestion, coughing, shortness of breath, severe fatigue, diarrhea, loss of appetite, sore throat and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Trevor Trollope**

471.    Mr. Trollope was a prisoner at EOCI, where corrections staff were not wearing masks, did not properly sanitize or take other precautions to prevent the spread of COVID-19. Many corrections staff called the COVID-19 pandemic an "election scare" and a hoax. Prisoners from quarantine units worked in the kitchen, garment factory, and the call center run by OCE. COVID-19 positive prisoners were working in the garment side of the OCE building. The call center and garment employees worked in the same building, use the same entrances, and were searched by the same staff persons. These prisoners were working alongside prisoners from other units. Kitchen staff from quarantine units served food to prisoners from other units and staff from other units served food to prisoners from quarantine units. Prisoners were packed inches from one another during meals. Corrections staff at EOCI were permitted to go to work sick. Prisoners that tested positive were sent back to the unit to collect their belongings or await being

PAGE 101 – SECOND AMENDED COMPLAINT

transferred to quarantine. On October 7, 2020, Mr. Trollope tested positive for COVID-19. He was transferred to SRCI and placed in IMU. He was treated as though he were being disciplined; he was denied any cell sanitation or personal hygiene, telephone access, grievance access, and showers. He was given half rations of food, and the lights were left on all night. He lost significant weight. This significantly affected his mental health.

472.    Mr. Trollope experienced body aches, shortness of breath, cough, headaches, and loss of taste and smell. He is still experiencing headaches, shortness of breath and loss of smell and taste. He suffered and continues to suffer anxiety, depression, and thoughts of death. Mr. Trollope suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Ryan Vanhorn

473.    As a result of defendants' failure to protect Mr. Vanhorn, in September 2020, Mr. Vanhorn began to develop COVID-19 symptoms. On October 3, 2020, Mr. Vanhorn tested positive for COVID-19.

474.    Mr. Vanhorn suffered from loss of taste and smell, shortness of breath, fever, nausea, body pain, headaches, ongoing breathing difficulty. Both his illness and his treatment at EOCI exacerbated Mr. Vanhorn's serious mental health issues. Mr. Vanhorn suffered and continues to suffer anxiety, depression, thoughts of death, and nightmares. Mr. Vanhorn suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Corey Wade

475.    Mr. Wade observed staff not wearing masks, making statements downplaying COVID, not imposing social distancing and placing prisoners in close proximity to each other.

PAGE 102 – SECOND AMENDED COMPLAINT

He observed staff placing infected prisoners on his unit and staff placed Mr. Wade in a unit with infected prisoners. Staff placed prisoners awaiting test results in his unit. Mr. Wade was made to work with and around quarantined prisoners. He tested positive for COVID-19 on December 22, 2020.

476.    Mr. Wade experienced fever, chills, body and muscle aches, nerve pain, loss of taste and smell, headache, migraines, nausea, abdominal pain, congestion, shortness of breath, fatigue, loss of appetite, sore throat and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**James Wagner**

477.    Mr. Wagner observed staff not wearing masks, making statements downplaying COVID, not imposing social distancing and placing prisoners in close proximity to each other. He observed staff placing infected and quarantined prisoners in his unit. Staff placed prisoners awaiting test results in his unit. Mr. Wagner was made to work with and around infected prisoners. He tested positive for COVID-19 on December 22, 2020.

478.    Mr. Wagner experienced fever, chills, body and muscle aches, nerve pain, loss of taste and smell, chest pain, headache, migraines, nausea, abdominal pain, congestion, coughing, shortness of breath, fatigue, diarrhea, loss of appetite, sore throat and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19. Mr. Wagner continues to experience shortness of breath.

**Robert Walker**

479.    Mr. Walker works in the bakery. OSCI staff routinely ignored social distancing and did not always wear masks. OSCI staff forced prisoners to go to meals, yard time, etc., in large numbers which made units commingle with no ability to socially distance. On September 8,

PAGE 103 – SECOND AMENDED COMPLAINT

2020, Mr. Walker was transported along with hundreds of other prisoners in vans to OSP. Mr.

Walker was returned to OSCI and resumed working in the kitchen and bakery. Multiple staff

members tested positive and were not being checked for symptoms on their entry to the facility.

Several kitchen staff and prisoners developed symptoms and still went to work. A kitchen staff

person contracted COVID-19 and worked with prisoners and staff. In November 2020, Mr.

Walker's cellmate reported to staff that he had a fever. They left them in a cell together. The

following day, Mr. Walker developed a fever and flulike symptoms. Three days later he was

tested; two days after that he tested positive and was sent to CCCF.

480.    Mr. Walker suffered loss of taste and smell, which has only partially returned,

shortness of breath, which is ongoing, fever, chills, and headaches. Mr. Walker suffered severe

emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he

would die from COVID-19.

**Tracy Walls**

481.    Mr. Walls observed staff not wearing masks, making statements downplaying

COVID, not imposing social distancing and placing prisoners in close proximity to each other.

He observed staff placing infected and quarantined prisoners on his unit and staff placed Mr.

Walls in a unit with infected prisoners. Staff placed prisoners awaiting test results in his unit. Mr.

Walls was made to work with and around infected prisoners. He tested positive for COVID-19

on April 30, 2020.

482.    Mr. Walls experienced fever, chills, body and muscle aches, nerve pain, loss of

taste and smell, chest pain, headache, migraines, confusion, fog, memory loss, nausea, abdominal

pain, congestion, coughing, shortness of breath, fatigue, diarrhea, loss of appetite, sore throat and

severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear

PAGE 104 – SECOND AMENDED COMPLAINT

that he would die from COVID-19.

**Richard Weaver**

483.    Due to a fire evacuation, Mr. Weaver was moved from OSCI to OSP. At OSP,

Mr. Weaver was housed on a unit with prisoners that were known to be infected with COVID-

19. On approximately September 28, 2020, Mr. Weaver was moved back to OSCI. He was

placed on a unit with many other prisoners positive with COVID-19. On October 1, 2020, Mr.

Weaver was experiencing symptoms consistent with COVID-19 and received a COVID-19 test.

On October 4, 2020, Mr. Weaver learned that he tested positive for COVID-19. He was then

immediately sent to CCCF for treatment.

484.    At CCCF, Mr. Weaver suffered severe COVID-19 symptoms, severe body aches,

migraines, laid on bed for 4 days, could not breathe, lost taste and smell, fever, and high blood

pressure. Mr. Weaver did not have access to an asthma inhaler which exacerbated his symptoms.

Mr. Weaver continues to experience shortness of breath, difficulty breathing, loss of taste,

weakness, and diarrhea. Mr. Weaver suffered severe emotional distress and trauma caused by his

illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Michael Wheeler**

485.    Mr. Wheeler, who is 62 years old, should have been moved out of the dorm in

which he lived because of his medical history—Mr. Wheeler suffers from COPD and

sarcoidosis. From September 30 to October 13, 2020, 40 prisoners came down with COVID-19.

Prisoners in his dorm started developing symptoms and he was terrified of contracting COVID-

19 and dying. Mr. Wheeler was left in the unit for days before he started developing symptoms

himself. He tested positive on October 13, 2020.

486.    Mr. Wheeler suffered very severe symptoms. Mr. Wheeler developed shortness of

PAGE 105 – SECOND AMENDED COMPLAINT

breath and a high fever. After this, he was transferred to the ICU at St. Anthony's hospital. He

suffered and continues to suffer fatigue, body aches, loss of mental acuity and memory, and

weakness. COVID-19 has caused permanent loss of function for him. Mr. Wheeler suffered

severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear

that he would die from COVID-19.

### Anthony White

487.    While Mr. White resided at TRCI, staff were not enforcing social distancing with

quarantined prisoners either on his unit. Staff members were working on quarantine units and

then working in non-quarantine units. TRCI staff did not change gloves between searches. On

December 21, 2020, a group of prisoners received a tranche of rapid COVID-19 tests from

nurses during the daytime. After the shift ended, the staff that took over were not told who tested

positive and who had not. All the prisoners were permitted to leave their cells and comingle with

other prisoners. Shortly after this incident, Mr. White tested positive for COVID-19 on

December 31, 2020.

488.    Mr. White suffered headaches, body aches, shortness of breath, severe cough,

sweats, fever, chills, nerve pain, abdominal pain, diarrhea, lose sense of smell and taste, mental

confusion, memory loss, loss of appetite, and severe fatigue. White is a paraplegic following

being short in the spine. This has caused severe nerve damage. He lost his sense of smell and

taste and has not recovered them completely. Mr. White has continuing nerve pain because of

contracting COVID-19. Mr. White suffered anxiety and depression. Mr. White suffered severe

emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he

would die from COVID-19.

### Jonathan White

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

489.    Mr. White observed staff not wearing masks, making statements downplaying COVID, not imposing social distancing and placing prisoners in close proximity to each other. He observed staff placing infected and quarantined prisoners in his unit and staff placed Mr. White in a unit with infected prisoners. Staff placed prisoners awaiting test results in his unit. Mr. White was made to work with and around infected prisoners. He tested positive for COVID-19 on October 1, 2020.

490.    Mr. White experienced fever, chills, body and muscle aches, loss of taste and smell, headache, migraines, confusion, fog, memory loss, nausea, congestion, coughing, shortness of breath, fatigue, loss of appetite, sore throat and severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19. Mr. White's sense of smell and taste have not returned, and he continues to experience shortness of breath.

**Jacob Whitt**

491.    On December 1, 2020, a transport of prisoners from DRCI arrived at CRCI containing multiple prisoners that had tested positive for COVID-19. Mr. Whitt tested positive on December 9, 2020; he was left on his unit for another day with other prisoners. This was common practice at the institution—prisoners that have received COVID-19 tests either are returned to their cells awaiting the results or are left in their cells after they have tested positive. This resulted in a predictable rapid spread of the virus through CRCI.

492.    Mr. Whitt suffered shortness of breath, cough, chest pain, fever, and fatigue. Mr. Whitt continues to experience shortness of breath, chest pain, and fatigue. Mr. Whitt suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

PAGE 107 – SECOND AMENDED COMPLAINT

**Brandon Willis**

493.    Mr. Willis worked in the kitchen at OSCI. Kitchen staff included prisoners that worked on quarantine units working alongside prisoners that were not on quarantine units. Several kitchen staff and prisoners developed symptoms and still went to work. Kitchen staff served food to and handled the dishes of prisoners from quarantine units. In November 2020, Mr. Willis again began to experience COVID-19 symptoms. He was refused a test.

494.    Mr. Willis suffered body aches, joint pain, congestion, shortness of breath, loss of sense of smell and taste, headaches, soreness, and nausea. Mr. Willis suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**Charles Withrow**

495.    On November 25, 2020, while still at DRCI, Mr. Withrow took a COVID-19 test so he could be transported to CRCI. Three DRCI officers tested positive that day. On November 28-29, 2020, the situation at DRCI escalated to "tier 3" with 40 prisoners going into isolation. On December 1, 2020, he was transported with AIC Nicholas Hogan to CRCI. Mr. Hogan had Covid and was seated directly next to him. They were both put in the general population at CRCI. Mr. Withrow had been in dorm 2, but the shower was broken so had to use an 80-person shower in Dorm 3. After arriving at CRCI, where he was placed on a large dorm, Mr. Withrow developed COVID-19 symptoms. He tested positive on December 6 and on December 7, 2020, he was transported to CCCF for further treatment.

496.    Mr. Withrow suffered severe headaches, sore throat, burning eyes, congestion and body aches so bad he was prescribed tramadol. Mr. Withrow still has no sense of smell, has

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

constant tingling in his feet as if walking on glass or needles, and cannot stand for long periods of time. Mr. Withrow suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Wayne Woodruff

497.    As a result of the complete disregard for easily employed and mandatory precautions, Mr. Woodruff contacted COVID-19 and tested positive on September 29, 2020. Mr. Woodruff was transferred to SRCI on October 6, 2020, and placed in IMU. He was treated as though he were being disciplined; he was denied any cell sanitation or personal hygiene, telephone access, grievance access, and showers. He was given half rations of food, and the lights were left on all night. He lost significant weight.

498.    Mr. Woodruff suffered loss of taste and smell, cramps, severe body aches, fear of death, fatigue, chills, cough, and congestion. Both his illness and his treatment at SRCI exacerbated Mr. Woodruff's serious mental health issues. Mr. Woodruff's brother died while he was at SRCI and was not allowed to call his family. He suffered and continues to suffer anxiety, depression, and panic attacks. Mr. Woodruff suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

### Justin Woods

499.    Mr. Woods was incarcerated at EOCI when he contracted COVID-19. He observed staff not wearing masks, making statements downplaying COVID, and not imposing social distancing. He observed staff placing infected and quarantined prisoners in his unit and staff placed Mr. Woods in a unit with infected prisoners. Staff placed prisoners awaiting test results in his unit. He tested positive for COVID-19 on November 7, 2020.

500.    Mr. Woods experienced fever, chills, body and muscle aches, nerve pain, loss of

PAGE 109 – SECOND AMENDED COMPLAINT

taste and smell, chest pain, nausea, abdominal pain, coughing, shortness of breath, fatigue, loss

of appetite, sore throat and severe emotional distress and trauma caused by his illness, lack of

appropriate treatment and fear that he would die from COVID-19.

### Richard Wright

501.    OSCI staff routinely ignored social distancing and did not always wear masks.

OSCI staff forced prisoners to go to meals, yard time, etc., in large numbers which made units

commingle with no ability to socially distance. Mr. Wright's cellmate worked in the kitchen. On

October 27, 2020, both Mr. Wright and his cell mate were moved to a segregation and tested.

Mr. Wright's cellmate tested positive, and Mr. Wright tested negative. After some time, they

took Mr. Wright's cellmate away but left Mr. Wright in the cell. OSCI staff told Mr. Wright they

were taking bets on whether he would retest positive. On October 30, 2020, Mr. Wright tested

positive for COVID-19.

502.    Mr. Wright experienced fever, chills, body and muscle aches, loss of taste and

smell, headache, shortness of breath, fatigue, suffered from panic attacks because of his

experience, and severe emotional distress and trauma caused by his illness, lack of appropriate

treatment and fear that he would die from COVID-19.

### Tyler Young

503.    Mr. Young worked in the kitchen at OSCI. Multiple OSCI staff members tested

positive and were not being checked for symptoms on their entry to the facility. Several kitchen

staff and prisoners developed symptoms and still went to work. A kitchen staff member

contracted COVID-19 and worked with prisoners and staff. The kitchen coordinator frequently

removed his mask in the kitchen to speak with prisoners and staff. He was infected with COVID-

19. OSCI did not provide sanitizing supplies to the kitchen employees until after 4 kitchen

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

employees got sick. Mr. Young was placed in a cell that had just been occupied by a COVID-19 positive prisoner. The cell was not cleaned or sanitized, and he was denied cleaning supplies until the following day. Shortly thereafter, on November 12, 2020, Mr. Young tested positive for COVID-19.

504.    As a result of his COVID infection, Mr. Young lost his sense of taste and smell and suffered severe body aches, shortness of breath and fatigue. Mr. Young suffered from panic attacks because of his experience. Mr. Smith suffered severe emotional distress and trauma caused by his illness, lack of appropriate treatment and fear that he would die from COVID-19.

**CLAIM I**

**(Negligence)**

**(against Defendants ODOC and OCE)**

505.    Plaintiffs re-allege and incorporate paragraphs 1-504 and 516-520 as though fully set forth herein.

506.    ODOC knew or should have known that its employees and agents were not observing social distancing, wearing masks, or otherwise protecting against the spread of COVID-19 and that this presented a significant risk of infecting prisoners such as the plaintiffs. ODOC knew or should have known that placing COVID-infected prisoners in cells, units or dormitories with uninfected prisoners presented a significant risk of infecting prisoners such as the plaintiffs. ODOC knew or should have known that forcing COVID-infected prisoners to work alongside of or in the same space as uninfected prisoners presented a significant risk of infecting prisoners such as the plaintiffs. ODOC knew or should have known that returning symptomatic prisoners awaiting test results to their units to await results presented a significant risk of infecting prisoners such as the plaintiffs. ODOC knew or should have known that failing

PAGE 111 – SECOND AMENDED COMPLAINT

to protect Plaintiffs would result in their suffering physical harm and severe physical and mental

pain and suffering. Because of ODOC's failure to protect them, plaintiffs suffered physical harm

and severe physical and mental pain and suffering.

507.    ODOC failed to use reasonable care in housing plaintiffs as alleged above.

ODOC's conduct was negligent.

508.    ODOC owes plaintiffs a higher standard of care because of the nature of

incarceration. As wards of the State, ODOC manages all aspects of plaintiffs' daily lives and

decides with whom they will interact, where they will work, live, sleep, bathe, use the toilet,

recreate, etc. Had plaintiffs been free persons, they would have been able to abide by social

distancing, mask wearing, personal hygiene, and other obvious methods of protecting themselves

from COVID-19. However, as prisoners, ODOC prevented plaintiffs from being able to take

these measures. ODOC voluntarily took custody of plaintiffs and deprived them of normal

opportunities for protection; this created a non-delegable duty to ensure that plaintiffs were safe

from COVID-19 while incarcerated. Defendants failed to meet their obligation to protect

prisoners from known, obvious and predictable threats to their health and safety.

509.    ODOC's conduct was unreasonable in light of the risk of harm to plaintiffs.

ODOC controlled all aspects of plaintiffs' lives. Plaintiffs' contracting COVID-19 loss could

have easily been prevented by not taking pointlessly dangerous, affirmative steps that placed

plaintiffs' lives at risk. Instead, ODOC staff took affirmative steps to endanger the plaintiffs,

such as housing sick prisoners with well prisoners, forcing sick prisoners to work with well

prisoners, and failing to take the obvious, and indeed obligatory, precaution of wearing PPE

while interacting with prisoners and one another. Forcing prisoners to work and live with

prisoners from quarantine units and placing prisoners with known exposure to COVID-19 in

PAGE 112 – SECOND AMENDED COMPLAINT

units without such exposure while the exposed inmates awaited their test results. This was patently unreasonable and reckless.

510.    As a direct and proximate result of ODOC's negligence, plaintiffs suffered physical harm and severe physical and mental pain and suffering. Defendants' failure to protect plaintiffs from COVID-19 infection resulted in permanent harm to plaintiffs.

511.    ODOC's conduct was a substantial factor in causing harm to Plaintiffs.

512.    Plaintiffs satisfied the Oregon Tort Claims Act notice requirement by timely filing the instant lawsuit.

513.    As a result of ODOC's conduct, Plaintiffs suffered economic and non-economic damages in an amount to be proved at trial.

514.    Plaintiffs are entitled to a prevailing party fee, their costs and their disbursements.

515.    Plaintiffs should be fully and fairly compensated for their non-economic damages in a sum that is just as determined by a jury. Plaintiffs should be fully and fairly compensated for these economic damages in a sum that is just as determined by a jury.

## CLAIM II

### (42 U.S.C. § 1983 – 8th Amendment – Failure to protect)

### (against defendants Myers, Brown, Peters, Washburn, Cain, Causey, Highberger, Kelly, Gower, Nooth, Persson, Blewett, Jeske, Emory, and Pedro)

516.    Plaintiffs re-allege and incorporate all prior paragraphs as though fully set forth herein.

517.    Defendants named above were deliberately indifferent to Plaintiffs' safety by doing the following:

   a)    Placing prisoners that were symptomatic or who had tested positive with

PAGE 113 – SECOND AMENDED COMPLAINT

COVID in confined spaces, such as cells, workspaces, and transportation vehicles, with prisoners that had not been infected with COVID-19;

b)    Causing prisoners that were housed in quarantine units (with COVID-19 positive prisoners) to work, eat, serve food, and otherwise interact in person with prisoners from nonquarantine units;

c)    Allowing corrections staff with known COVID-19 symptoms to work in the institutions;

d)    Allowing corrections staff to interact with prisoners without PPE such masks, gloves, etc.

e)    Failing to sanitize commonly touched surfaces such as telephones, tablets, and door handles;

f)    Failing to screen corrections staff for COVID-19 symptoms or fevers; and

g)    Failing to socially distance prisoners and staff.

518.    As a result of their deliberate indifference, defendants violated plaintiffs' right to be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution. Defendants' failure to protect plaintiffs from COVID-19 infection resulted in permanent physical and emotional harm. Plaintiffs will require future treatment because of defendants' indifference.

519.    Defendants' conduct was motivated by evil motive or intent or involved reckless or callous indifference to the federally protected rights of plaintiffs. As such, plaintiffs seek punitive damages in an amount determined by a jury at the time of trial.

520.    As a result of the defendants' violations plaintiffs' Constitutional rights, plaintiffs suffered physical harm and severe physical and mental pain and suffering. Accordingly,

PAGE 114 – SECOND AMENDED COMPLAINT

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

plaintiffs are entitled to economic and non-economic damages against defendants in an amount to be determined at trial for the violations of 42 U.S.C § 1983 and for plaintiffs' attorney fees and costs pursuant to 42 U.S.C. § 1988.

**PRAYER**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.      Damages in an amount to be determined by a jury at the time of trial to compensate the plaintiffs for physical pain and suffering;

B.      Damages in an amount to be determined by a jury at the time of trial to compensate the plaintiffs for emotional distress and other non-economic harm;

C.      Damages in an amount to be determined by a jury at the time of trial to compensate the plaintiffs for their economic harm;

D.      Punitive damages;

E.      Plaintiffs' attorneys' fees, costs, and expenses, pursuant to 42 U.S.C. § 1988; and

F.      Such other relief as the court deems just and proper.

**Plaintiffs request a trial by jury.**

DATED: April 8, 2021

**LAW OFFICES OF DANIEL SNYDER**

*s/ John Burgess*
John Burgess, OSB No. 106498
johnburgess@lawofficedanielsnyder.com
Carl Post, OSB No. 061058
carlpost@lawofficeofdanielsnyder.com
Tel: (503) 241-3617 / Fax: (503) 241-2249
Of Attorneys for Plaintiff

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249